OPINION
{¶ 1} Plaintiff-appellant Patricia L. Randall (n/k/a Lavy)[1]
appeals a decision of the Darke County Court of Common Pleas adopting a decision of the magistrate which overruled her motion to show cause why defendant-appellee William M. Randall should not be held in *Page 2 
contempt for failing to pay one-half of their minor son's rehabilitation and substance abuse treatment program that was not covered by health insurance. The judgment entry adopting the magistrate's decision was issued by the trial court on April 14, 2008. On May 1, 2008, Patricia filed a timely notice of appeal with this Court.
 I {¶ 2} William and Patricia were married on February 25, 1989, in Greenville, Ohio. The parties produced one child during their marriage: to wit, a son, B.M.R., born August 15, 1991.
 {¶ 3} William and Patricia finalized their dissolution on August 28, 1992. As part of their dissolution, Patricia was awarded primary legal and residential parental rights regarding B.M.R. William was awarded the standard order of visitation. William was also ordered to pay child support. Neither party was ordered to pay spousal support. The dissolution decree, however, stated that William was responsible for providing medical insurance for B.M.R. The decree further stated that "any and all medical, optical, dental, orthodontic, prescription drug, psychological or psychiatric expenses not covered by [William's health insurance policy] shall be equally divided" between the parties.
 {¶ 4} On August 21, 1996, William filed a motion to increase his visitation with B.M.R. Shortly thereafter, Patricia filed a motion to increase William's child support obligation on September 26, 1996. Eventually, the parties signed an agreed judgment entry filed on January 10, 1997, in which William's child support obligation was increased. By the terms of the judgment entry, William was still responsible for maintaining health insurance for B.M.R. The new agreed entry also provided that "all uninsured medical, dental, optical, orthodontic or *Page 3 
prescription drug expense incurred for the minor children [sic] of the parties shall be divided equally between the parties." Noticeably absent from the list of expenses were the uninsured psychological or psychiatric expenses which had been specifically mentioned in the 1992 decree of dissolution. William asserts that the parties agreed that William would be required to pay additional child support, but would no longer be required to pay for half of B.M.R.'s uninsured psychological or psychiatric expenses. For the first time on appeal, Patricia argues that the omission of uninsured psychological or psychiatric expenses from the January 10, 1997, entry was a mere "scrivenor's error" and that William should still be held responsible for said expenses should they become due.
 {¶ 5} Approximately ten years later, B.M.R. began developing behavioral and substance abuse problems which required outside intervention. Although William and Patricia both agreed that B.M.R. required professional help, they were unable to agree where he should receive treatment. Patricia unilaterally decided to send B.M.R. to an expensive residential treatment facility in Utah, and she informed William that he was responsible for half of the cost of the treatment since it was not covered by William's insurance. William told Patricia that he was unable to pay for half of the treatment, but Patricia proceeded with her plan and sent B.M.R. to the facility in Utah.
 {¶ 6} When it became apparent that William had no intention of paying for half of the cost of B.M.R.'s treatment, Patricia filed a motion to show cause why William should not be held in contempt for failing to pay for half of B.M.R.'s "medical expenses not covered by medical insurance." After a hearing on was held on October 1, 2007, the magistrate issued a written decision on November 26, 2007, which overruled Patricia's motion and held that *Page 4 
William was not responsible for the payment of half of the uninsured expenses incurred at the Utah treatment facility.[2] On April 14, 2008, the trial court overruled Patricia's objections and adopted the magistrate's decision.
 {¶ 7} It is from this judgment that Patricia now appeals.
 II {¶ 8} Initially, it should be noted that in accordance with Civ. R. 53, the trial court must conduct an independent review of the facts and conclusions contained in the magistrate's report and enter its own judgment. Dayton v. Whiting (1996), 110 Ohio App.3d 115, 118. Thus, the trial court's standard of review of a magistrate's decision is de novo.
 {¶ 9} An "abuse of discretion" standard, however, is the appellate standard of review when reviewing a trial court's adoption of a magistrate's decision. Claims of trial court error must be based on the actions taken by the trial court, itself, rather than the magistrate's findings or proposed decision. When an appellate court reviews a trial court's adoption of a magistrate's report for an abuse of discretion, such a determination will only be reversed where it appears that the trial court's actions were arbitrary or unreasonable. Proctor v.Proctor (1988), 48 Ohio App.3d 55, 60-61. Presumptions of validity and deference to a trial court as an independent fact-finder are embodied in the abuse of discretion standard. Whiting, supra.
 {¶ 10} An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. *Page 5 Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not merely substitute its judgment for that of the trial court. Berk v. Mathews (1990),53 Ohio St.3d 161, 169.
 III {¶ 11} Although not properly phrased, Patricia's first assignment of error is as follows:
 {¶ 12} "WHETHER THE TRIAL COURT ERRED IN GRANTING JUDGMENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 13} In her first assignment, Patricia contends that the trial court's judgment was against the manifest weight of the evidence. The manifest-weight standard-of-review is very deferential to a trial court. A reviewing court "has an obligation to presume that the findings of the trier of fact are correct." State v. Wilson, 113 Ohio St.3d 382,2007-Ohio-2202, at ¶ 24. It is not the reviewing court's proper place to (re)weigh the credibility of witnesses and evidence presented to the trial court. Id. Thus, if a trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," the reviewing court ought to affirm. Id. at ¶ 26 (citation omitted).
 {¶ 14} As previously noted, the parties' 1992 dissolution decree contained specific language which required William and Patricia equally divide "any and all medical, optical, dental, orthodontic, prescription drug, psychological or psychiatric expenses not covered by" William's health insurance policy. In January 1997, the parties modified the dissolution agreement to provide Patricia with additional child support. More importantly, the modified agreement eliminated William's obligation to pay half of any of B.M.R.'s uninsured psychological and/or psychiatric expenses. *Page 6 
 {¶ 15} Regarding the modification, the magistrate specifically found that William "testified that the deletion of psychological and psychiatric expenses was part of the negotiations when the parties reached the [January 1997] agreement * * *." The magistrate further found that Patricia did not offer any testimony or other evidence to contradict William's assertion.
 {¶ 16} During the hearing before the magistrate, Patricia provided the following testimony regarding the nature of the treatment B.M.R. would receive at the substance abuse treatment facility in Utah:
 {¶ 17} "Q: The program that [B.M.R.] is in now, that is — is that amedical facility?
 {¶ 18} "Patricia: It has a psychologist there, a nurse there. It's nota hospital that you stay in a hospital bed or anything like that.
 {¶ 19} "Q: Okay. So would it be called a psychological or psychiatricfacility maybe?
 {¶ 20} "Patricia: It's a bit of both because he receives all thetreatments there."
 {¶ 21} It is apparent from her own testimony that Patricia understood that the treatment her son was to receive at the facility in Utah was psychological and psychiatric in nature. The evidence adduced at the hearing also establishes that B.M.R. was never examined by a medical doctor regarding his substance abuse and behavioral issues. In fact, prior to his departure for the Utah treatment facility, B.M.R. had only been seen by "counselors, psychologists, probation officers, and educators * * *." Once B.M.R. was at the treatment facility, the evidence established that he was placed under the direct supervision of a team of licensed psychologists who were, in *Page 7 
turn, supervised by a psychiatrist.
 {¶ 22} The evidence adduced during the hearing established that the substance abuse and behavioral treatment B.M.R. received was comprised solely of psychological and psychiatric elements. William testified that he and Patricia intentionally removed language from the original dissolution decree requiring him to pay for half of any psychological and/or psychiatric expenses when they agreed to the judgment entry signed in January 1997. It is clear from the manner in which the parties drafted the original decree that they perceived a distinction between medical expenses as opposed to psychological and psychiatric expenses. The fact that they removed the terms "psychological and psychiatric" from the list of expenses in the modified judgment entry supports a finding that William was no longer to be held responsible for half the cost of those expenses should they be incurred. Thus, the trial court did not abuse its discretion when it adopted the decision of the magistrate holding that William had no obligation to pay half of the cost of B.M.R.'s substance abuse treatment at the facility in Utah.
 {¶ 23} Patricia's first assignment of error is overruled.
 IV {¶ 24} Patricia's second assignment of error is as follows:
 {¶ 25} "WHETHER THE TRIAL COURT ERRED IN ITS APPLICATION OF OHIO LAW."
 {¶ 26} In her second assignment, Patricia contends that the trial court abused its discretion when it failed to find that substance abuse treatment is a medical expense. In particular, Patricia argues that the trial court misapplied our prior holding *Page 8 
in Gulde v. Gulde (March 7, 1985), Darke App. No. 1129, wherein we held that a psychologist's fees for child counseling did not qualify as "medical expenses" under Ohio law.[3] Patricia argues that treatment for substance abuse differs from treatment for psychological problems insofar as substance abuse treatment is mostly medical in nature. Thus, she asserts that William should be required to pay half of the costs associated with B.M. R.'s substance abuse treatment since it was primarily for medical purposes.
 {¶ 27} Patricia also directs our attention to a case from the Eleventh District Court of Appeals, Shumate v. Shumate, (August 10, 1990), Portage App. No. 89-P-2121, wherein the court framed the issue on appeal as whether the language in a separation agreement regarding the payment of uninsured medical expenses required the payment of substance abuse treatment. In Shumate, the parties' separation agreement stated as follows:
 {¶ 28} "Husband shall keep the minor child covered as an insured on his policy or policies of hospitalization and major medical insurance coverage, as the same is provided through Husband's employment, andHusband shall pay or otherwise be responsible for the payment of allnon-covered hospital, medical, dental surgical, optical and prescriptivedrug expenses for the minor child, until he attains the age of 18 years * * *." Id.
 {¶ 29} The Shumate court held in the absence of any contrary language in the parties' separation agreement, as well as other evidence submitted, the trial court held *Page 9 
that "the care provided by a psychiatrist, a licensed medicalprofessional, was included as a medical expense." Id. Thus, the husband in Shumate was required to pay for his minor child's substance abuse treatment whose total cost was approximately $17,077.00. Id.
 {¶ 30} After a thorough analysis of the record, we find the facts inShumate to be distinguishable from the facts in the instant case. As we stated in our analysis of Patricia's first assignment, and unlike the parties in Shumate, the parties in the instant case chose to create a distinction between medical expenses and psychological and/or psychiatric expenses when they drafted the original dissolution agreement in late 1992. More importantly, in 1997 when William and Patricia modified the agreement to reflect an increase in William's child support obligation, they removed the terms psychological and psychiatric from the list of expenses in the modified judgment entry in 1997. As previously stated, this action taken by the parties supports a finding that William was no longer to be held responsible for half the cost of psychological and psychiatric expenses should they be incurred.
 {¶ 31} As noted by William in his merit brief, in Gulde, we relied on the rationale of the Georgia Supreme Court in Rodgers v. Rodgers (1975),234 Ga. 463, 216 S.E.2d 322, in which the court stated:
 {¶ 32} "The meaning and effect of an agreement incorporated into a divorce decree should be determined according to the usual rules for the construction of contracts. * * * The cardinal rule in construing contracts is to ascertain the intention of the parties." (Citations omitted).
 {¶ 33} In neither Gulde nor Shumate did the parties' separation agreements *Page 10 
evidence an intent to differentiate between medical expenses and psychological and/or psychiatric expenses. In the present case, however, the express language in the original decree establishes that William and Patricia intended to distinguish medical expenses from psychological and psychiatric expenses. When the language requiring William to pay for half of any uninsured psychological and/or psychiatric expenses was deleted from the 1997 agreement, William was no longer responsible for the payment of half of those expenses. Patricia's own testimony indicates that the substance abuse treatment B.M.R. received in Utah was psychological and psychiatric in nature. Thus, we conclude that the trial court did not abuse its discretion when it held that William was not required to pay for half of the cost of B.M.R.'s substance abuse treatment.
 {¶ 34} Lastly, we must note that Patricia's decision to help her son recover from his substance abuse and behavioral problems was laudable. In fact, both parties agreed that B.M.R. was in need of professional help. However, Patricia's unilateral decision to send B.M.R. to a costly and uninsured treatment program was unreasonable under the circumstances. Testimony was adduced at the hearing before the magistrate that the final cost of B.M.R.'s treatment would be in excess of $150,000.00. Yet, Patricia decided to send B.M.R. to the facility in Utah knowing full well that the state of William's finances would not allow him to cover half of that sum. On this point, Patricia testified as follows:
 {¶ 35} "Q: Okay. When you went to [William's] house and said this is what I'm doing and then you said he initially stated that he agreed to it then the next day he called and said he couldn't pay for it, correct.
 {¶ 36} "Patricia: Correct. *Page 11 
 {¶ 37} "Q: Okay. What did you do at that point? Did you say `Let's find something else that's less expensive. You find something less expensive,' or did you just say, `Well, I'm doing it anyway' which is what [William] says?
 {¶ 38} "Patricia: I asked him regardless of the financial part of it, does he agree that this is what [B.M.R.] needs and he said yes. And I said, `Well, I'm going to continue with this because I also agree this is what [B.M.R.] needs.' I did what was necessary for [B.M.R.]. I hadcustody and that's what I should do."
 {¶ 39} The record establishes that William located a much less expensive substance abuse treatment program in Cincinnati, Ohio, that would be 80% covered under his insurance, but he discontinued his efforts in this regard when Patricia decided to move forward with her plan even though she knew William was unable to pay for his half of the expensive treatment. If Patricia expected William to pay for half of B.M.R.'s substance abuse treatment, she should have allowed William the opportunity to locate a comparable, more affordable treatment program, one which was covered under William's medical insurance for his son.
 {¶ 40} Patricia's second assignment of error is overruled.
 V {¶ 41} Patricia's third and final assignment of error is as follows:
 {¶ 42} "WHETHER THE LAW IN THE COURT OF APPEALS FOR THE SECOND DISTRICT SHOULD BE REVERSED."
 {¶ 43} In her final assignment of error, Patricia contends that we should reverse our holding in Gulde in order to conform with the decisions of other Ohio appellate districts which have held that psychological expenses are properly considered to fall *Page 12 
under the general umbrella of "medical expenses." In light of the foregoing, we find that the facts of the instant case are distinguishable from the operative facts in Guide since the language utilized by the parties in the original 1992 dissolution decree evidence an intent by the parties to differentiate between medical expenses as opposed to psychological and psychiatric expenses. The deletion of the terms "psychological and psychiatric" from the list of expenses establishes that the parties intended to release William from his duty to pay half of any uninsured expenses resulting from treatment that was psychological and/or psychiatric in nature. In Guide, the divorce decree made no such distinction between medical expenses and psychological and/or psychiatric expenses. Regarding payment for uninsured expenses, the Guide divorce decree simply stated that the husband was required to pay for "the extraordinary medical, dental, and optical expenses of the minor children." Thus, the instant case is clearly distinguishable from our decision in Guide, and we find no merit to Patricia's argument in this regard.
 {¶ 44} Patricia's third and final assignment of error is overruled.
 VI {¶ 45} All of Patricia's assignments having been overruled, the judgment of the trial court is affirmed.
GRADY, J. and WOLFF, J., concur.
(Hon. William H. Wolff, retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] For purposes of clarity, the parties referenced in this opinion will be referred to by their first names.
[2] On December 4, 2007, an amended magistrate's decision was filed which clarified the magistrate's original finding that "expenses for an educational consultant, transportation, room board, activity fees and tuition are not a part of a non-custodial parent's obligation under a medical expense order, regardless of the definition of medical expenses."
[3] Our decision in Gulde remains the law in the Second District. *Page 1