OPINION
{¶ 1} Joel Edgington appeals, pro se, from a Civil Stalking Protection Order ("CSPO") entered against him in favor of Robin Walker. Edgington has failed to raise any assignments of error, however, we will construe his appellate brief as raising arguments: (1) that the trial court's decision is against the manifest weight of the evidence; and (2) that he was denied a fair hearing. *Page 2 
 {¶ 2} The evidence that Edgington cites in support of his manifest weight argument is not contained in the record before us; therefore we may not consider it. We conclude that the evidence contained in the record supports the decision of the trial court. We also conclude that the record does not support Edgington's claim that he was denied a full and fair hearing. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} On May 24, 2007, Robin Walker filed a Petition for Civil Stalking Protection Order seeking to restrain Edgington from having any contact with her. A hearing was held on June 15, 2007 at which time the following evidence was adduced.
 {¶ 4} Walker and Edgington had dated for a period of two years until they broke up in April of 2006. However, according to Walker, Edgington continued to call her numerous times both day and night until she was forced to change her telephone number. In August, 2006, Edgington followed Walker to a restaurant, where he tried to engage her in conversation. Later that month, Walker pulled her vehicle into her driveway when she noticed the headlight from a motorcycle follow her into the driveway. Edgington then confronted Walker asking her "where the hell" she had been and accusing her of "having sex."
 {¶ 5} In September, Edgington called Walker and told her that he was in the process of committing suicide. Walker informed Edgington's mother; but the attempt, according to Edgington was not serious. Thereafter, Edgington started leaving telephone messages calling Walker "bitch" and "whore." Walker changed her telephone number. Edgington's own testimony establishes that after Walker changed *Page 3 
her phone number, he began e-mailing her so much that she changed her e-mail account. He admitted that he then began e-mailing her at her school account, even sending her e-mails after she filed the petition for the protection order.
 {¶ 6} Edgington also entered Walker's vehicle, which was parked in her driveway, and left a letter and a rose in the seat. In the letter, Edgington claimed that he was going to make another attempt at suicide. The letter described his plan in "graphic detail." Again, the attempt was unsuccessful.
 {¶ 7} Walker testified that Edgington is obsessed with her and that he "freaks me out." She testified that she knows he has a gun collection and that he "always carries a gun." She further testified that she feared that he might harm her. She testified that Edgington repeatedly tells her that she is the "most important thing" in his life and that she feels as though he would rather harm her than let her go. She testified that she has trouble sleeping and that she has nightmares when she does sleep.
 {¶ 8} Edgington also testified that he has a gun collection consisting of three shotguns, "five or six" handguns and four rifles. He also admitted that, given his actions, it was not unreasonable for Walker to feel stressed.
 {¶ 9} Following the hearing, the trial court stated that it found by a preponderance of the evidence that Edgington had caused Walker mental distress. The trial court granted Walker's petition and entered an order restraining Edgington from contacting Walker for a period of five years. From this order, Edgington appeals.
 II *Page 4 {¶ 10} Edgington's First Assignment of Error states as follows:[1]
 {¶ 11} "EDGINGTON WAS DENIED A FULL AND FAIR HEARING."
 {¶ 12} Edgington intimates throughout his appellate brief that the hearing on this matter was "corrupted" and unfair. It appears that he bases his argument upon the claim that Clark County Sheriff's deputies searched him before he entered the courthouse for the hearing and the fact that there were "an additional six to eight deputies waiting at the security checkpoint" in the courthouse.
 {¶ 13} We note that the evidence cited by Edgington in his appellate brief is not reflected in the record before us. We further note that the record is devoid of any indication that Edgington raised any issue regarding the Sheriff's Department in the trial court. Indeed, Edgington failed to assert any claim of bias or lack of fairness in the trial court. Furthermore, there is nothing in the record to indicate that Edgington was deprived of a fair hearing.
 {¶ 14} Thus, because the issue raised in this assignment of error one was not preserved for review, Edgington has forfeited all but plain error review. However, the plain error doctrine is not favored in civil cases and must be applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself. Goldfuss v. Davidson, 79 Ohio St.3d 116, 1997-Ohio-401, syllabus; In re McLemore, Franklin App. No. 03AP-714, 2004-Ohio-680, ¶ 11.
PGPage 5
 {¶ 15} There is nothing in the record to support Edgington's contention that he was deprived of a fair hearing or that the trial court was biased against him. Moreover, the evidence cited in his appellate brief does not demonstrate any bias on the part of the trial judge, nor does it demonstrate any unfairness. Thus, we find no error, let alone plain error. Accordingly, the First Assignment of Error is overruled.
 III {¶ 16} The Second Assignment of Error provides:
 {¶ 17} "THE DECISION OF THE TRIAL COURT IS NOT SUPPORTED BY THE EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 18} Edgington contends that the evidence cited in his brief shows that the decision of the trial court is erroneous. His appellate brief is replete with statements of fact that he contends demonstrate that the trial court's findings are incorrect. However, we will not consider these facts as they are not a part of the record before us and thus are not properly preserved for our review.
 {¶ 19} Giving Edgington the benefit of the doubt, we will also construe his arguments as claiming that the evidence actually contained in the record does not support the trial court's judgment.
 {¶ 20} R.C. 2903.214, which governs the filing of a petition for a CSPO, provides that a petitioner seeking a CSPO must demonstrate that the respondent engaged in the offense of menacing by stalking, in violation of R.C. 2903.211. The menacing by stalking statute, R.C. 2903.211, provides that, "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." *Page 6 
R.C. 2903.211(A)(1).
 {¶ 21} "Pattern of conduct" is defined as "two or more actions or incidents closely related in time * * *." R.C. 2903.211(D)(1). "Mental distress" means "any mental illness or condition that involves some temporary substantial incapacity * * * or any mental illness or condition that would normally require * * * treatment * * * whether or not" treatment is sought. R.C. 2903.211(D)(2). "Mental distress need not be incapacitating or debilitating * * * [and] expert testimony is not required to find mental distress." Perry v. Joseph, Franklin App. Nos. 07AP-359, 07AP-360, 07AP-361, 2008-Ohio-1107, ¶ 8. "A trial court is permitted to rely on its knowledge and experience in determining whether mental distress has been caused." Id.
 {¶ 22} The culpable mental state of menacing by stalking is "knowingly," which is defined in R.C. 2901.22(B) as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 23} Thus, in order to merit a civil protection order, the petitioner need not prove that the respondent intended to cause actual harm to the other person; instead, the evidence must show that the respondent knowingly engaged in a pattern of conduct that caused the other person to believe that the respondent will cause physical harm or that caused mental distress to the other person. Perry v. Joseph, supra, ¶ 7.
 {¶ 24} "The decision whether or not to grant a civil protection order is well within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion." Bucksbaum v.Mitchell, Richland App. No. 2003-CA-0070, 2004-Ohio-2233, *Page 7 
at ¶ 14. An abuse of discretion occurs when the decision of a court is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence ." C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. A preponderance of the evidence is all that is required to support a civil protection order. Jenkins v.Jenkins, Franklin App. No. 06AP-652, 2007-Ohio-422, ¶ 17. Further, "the weight to be given to the evidence and the credibility of the witnesses is primarily a matter for the trier of fact." Id. at ¶ 14. "This is because the trier of fact is in the best position to view the witnesses and consider their demeanor and truthfulness." Id. "An `appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court findings.'" Id., quoting State ex rel. Celebrezze v. EnvironmentalEnterprises, Inc. (1990), 53 Ohio St. 3d 147, 154.
 {¶ 25} Here, the evidence presented in support of the CSPO, if believed, establishes that Edgington engaged in a pattern of conduct by continuously calling and e-mailing Walker and by confronting her at home and a restaurant. The evidence also establishes that Walker did in fact suffer from mental distress, causing her to have trouble sleeping and causing her to fear that Edgington would cause her physical harm. Indeed, Edgington acknowledged that Walker had cause to feel stress due to his actions. Thus, based on this record, we conclude that the trial court's decision is supported by the record and that it did not err by granting the CSPO.
 {¶ 26} Walker's testimony is not inherently incredible; indeed, some of her *Page 8 
testimony is corroborated by Edgington. The trial court evidently found Walker to be a credible witness. We conclude that the trial court did not lose its way by crediting Walker's testimony. Therefore, the CSPO is not against the manifest weight of the evidence.
 {¶ 27} The Second Assignment of Error is overruled.
 IV {¶ 28} Both of Edgington's assignments of error having been overruled, the Civil Stalking Protection Order from which this appeal is taken is Affirmed.
WOLFF, P.J., and GRADY, J., concur.
[1] As stated above, Edgington fails to set forth any assignments of error as required by App. R. 16(A)(3). Therefore, we have inferred the assignments of error set forth in this opinion, based upon our understanding of the arguments raised in Edgington's appellate brief. *Page 1