[Cite as *State v. Vales*, 2015-Ohio-3874.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### Nos. 102014 and 102015

---

# STATE OF OHIO

### PLAINTIFF-APPELLEE

## vs.

# ANTHONY VALES

### DEFENDANT-APPELLANT

---

## JUDGMENT:
### AFFIRMED

---

Criminal Appeals from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-14-582127-A and CR-14-583910-A

**BEFORE:** Boyle, J., Kilbane, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** September 24, 2015

**ATTORNEY FOR APPELLANT**

Brian A. Smith
755 White Pond Drive
Suite 403
Akron, Ohio   44320

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Jennifer A. Driscoll
          Anthony Thomas Miranda
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

**{¶1}** Defendant-appellant, Anthony Vales, appeals his conviction and sentence. He raises three assignments of error for our review:

> 1. The trial court's decision to deny appellant's motion to withdraw his guilty plea, prior to sentencing, was an abuse of discretion.
>
> 2. The trial court erred when it classified appellant as a sexual predator pursuant to the Megan's Law classification system, since the evidence to so classify appellant was insufficient as a matter of law.
>
> 3. The record does not support the imposition of consecutive sentences pursuant to R.C. 2929.14.

**{¶2}** Finding no merit to his arguments, we affirm.

<u>Procedural History and Factual Background</u>

**{¶3}** In 2014, Vales was indicted in two separate cases. In February 2014, he was charged with failure to provide notice of change of address in violation of R.C. 2950.05(E). In April 2014, he was charged with four counts: rape in violation of R.C. 2907.02(A)(2), two counts of kidnapping in violation of R.C. 2905.01(A)(2) and (A)(4), and one count of intimidation of a crime victim or witness in violation of R.C. 2921.04(B). The rape charge carried a sexually violent predator specification, and one of the kidnapping counts carried both a sexual predator specification and a sexual motivation specification.

*Plea Hearing*

**{¶4}** In July 2014, Vales entered into a plea deal with the state. He pleaded guilty to an amended indictment of attempted rape in violation of R.C. 2923.02 and 2907.02(A)(2), abduction in violation of R.C. 2905.02(A)(1), intimidation of a crime victim or witness in violation of R.C. 2921.04(B), and failure to provide notice of change of address in violation of R.C. 2950.05(E)(1). As part of the plea agreement, the parties agreed that the attempted kidnapping and abduction merge for purposes of sentencing. The remaining charges and specifications were nolled.

**{¶5}** At the plea hearing, the state outlined the plea agreement. The trial court then addressed Vales personally. In response to the court's questioning, Vales told the court that he understood the state's outline of the plea agreement; that he was a United States citizen; that he had obtained a GED; that he had not consumed drugs, alcohol, or medication within the last 24 hours; that he was not suffering from any mental or physical disabilities; that he was thinking clearly; that no one threatened him or promised him anything to get him to enter into the guilty plea; that he was entering into the plea voluntarily; that he was satisfied with his attorneys and had ample time with them; that he understood the allegations against him; and that he understood that by pleading guilty, he was making a complete admission that he committed the allegations related to those offenses.

**{¶6}** Vales further informed the court that he was currently on community control sanctions in another case. The trial court asked Vales if he was aware that by pleading guilty,

he could be found in violation of his community control and face additional penalties, which could run consecutive to any time imposed in the current case. Vales replied that he understood.

{¶7} The trial court further asked Vales if he understood that by pleading guilty, the court could enter a judgment against him and proceed with sentencing. Vales indicated that he understood.

{¶8} The trial court then reviewed Vales's constitutional rights with him, and made sure that Vales understood those rights and understood that he was giving those rights up by entering into the plea.

{¶9} The trial court further reviewed the potential penalties of each offense with Vales, indicating that the attempted rape and abduction would merge for purposes of sentencing. The trial court further informed Vales of postrelease control and of the consequences that he could face if he violated the terms of his postrelease control, as well as the information required for informing Vales about possibly being labeled a sexual predator, sexual habitual offender, or a sexually oriented offender, and what each classification would entail.

{¶10} The trial court then asked Vales if he understood the penalties he was facing and if he had any questions about the proceedings. Vales indicated that he understood and that he did not have any questions. The trial court then asked the state and defense counsel if it had complied with Crim.R. 11, which both indicated that it had.

{¶11} The court then noted for the record that it was satisfied that Vales had been informed of his constitutional rights, that he understood the nature of the charges against him, the effect of the plea, and the maximum penalties that may be imposed. The court also found that the defendant's plea would be entered into knowingly, intelligently, and voluntarily. At that point, the court asked Vales how he plead as to each charge to which he replied "guilty." The trial court accepted Vales's guilty pleas and made a finding of guilt as to each offense.

{¶12} The court then referred Vales to the probation department for a presentence investigation report.

*Hearing on Motion to Withdraw Plea*

{¶13} Before the sentencing hearing, Vales filed a motion to withdraw his plea. In his motion, Vales stated:

> Defendant submits that he made an emotional decision when entering his plea. He felt great pressure when making the decision and deeply regrets pleading guilty as he maintains his innocence. Since pleading guilty, Mr. Vales, no longer under the emotion and pressure of having to make such a monumental decision, would like to withdraw his plea.

{¶14} At the sentencing hearing, defense counsel notified the court that Vales had filed a motion to withdraw his plea. Defense counsel indicated that Vales "felt great pressure in making [his decision to plead guilty] because of the possible life sentence, being on the brink of trial, and considering his prior conviction versus the credibility of the alleged victim in the case, and the age of the case."

{¶15} The state argued that it would suffer prejudice if Vales's motion was granted because the victim was present for sentencing, explaining that the victim was in "some medical hardship." The state further explained that Vales was experienced in the criminal justice system, so he understood everything that had occurred during his plea hearing.

{¶16} The court indicated that it reviewed both motions. It asked Vales what was it that he did not understand on "Rule 11." The court explained that "[e]verybody who comes in the Justice Center is emotional." The court further stated that Vales was there "with twelve priors," and asked again, what was it that Vales did not understand about "Rule 11."

{¶17} Defense counsel indicated again how Vales entered into the plea under pressure. The court stated to defense counsel, "you've been around a long time, you're a good lawyer. * * * [D]id you do your duty as a lawyer?" Defense counsel replied that each attorney did so (because Vales had two attorneys representing him). The trial court further asked if the judge who took the plea, which was a different one than the one assigned (all parties had agreed for the substitute judge to preside over the plea hearing), complied with Crim.R. 11. Defense counsel indicated that it was satisfied that the substitute judge fully complied with Crim.R. 11. Defense counsel further told the court that she was satisfied at the plea hearing that Vales had understood what was occurring.

{¶18} At that point, the trial court stated that it was satisfied that Vales made a knowing, intelligent, and knowledgeable plea, and denied his motion.     *Sentencing Hearing*

{¶19} At the sentencing hearing, defense counsel informed the court that Vales was only 16 years old when this crime occurred; he was 31 years old at the time of sentencing.[1]  Defense counsel explained that Vales had a number of issues, including the fact that his mother left him when he was 10 months old.   Because of that, Vales spent a lot of time with his father, who "abused PCP and crack."   Defense counsel further explained that Vales was physically and sexually abused as a child and attempted suicide on a number of occasions.   Defense counsel stated that Vales had been diagnosed with PTSD as a result of the events of his childhood. Defense counsel explained that Vales may have had a hard time understanding what consent meant when he was 16 years old, based on his experiences.   Defense counsel pointed out that Vales had not had "any sex-related problems in 15 years."

{¶20} Nancy Glick then spoke on behalf of Vales.   She stated that she was a court liaison for "the Positive Education Program" ("PEP").   She explained that she worked with children with severe emotional and behavior problems.   She remembered Vales being in the PEP program because he "was one of the troubled children," with "a lot of trauma in his life" and many "different home placements."   She said that she rarely comes to court, but Vales was one of "those kids that really strikes our hearts."   Glick visited Vales in jail; Glick said that he started crying when he saw her because he could not believe that she would show up to

---

[1] Vales was actually 17 years old when the crime occurred; he was 16 years old at the time of the previous rape.

see him. She requested the court give Vales a minimum sentence because she believed that Vales had changed since the crimes had occurred.

{¶21} Vales's defense counsel then spoke to the court again, stating that Vales had been regularly working at the time of his arrest. Vales was also in a "committed relationship," and his girlfriend had not "seen any sexual deviance" in him, or experienced any physical violence from him.

{¶22} Defense counsel further stated that Vales had been evaluated by Dr. Fabian, who prepared a mitigation report as well. Dr. Fabian's report explained Vales's childhood in more detail. Defense counsel submitted the report to the court.

{¶23} The state explained that Vales committed this "brutal rape" when he was 17 years old, six months after he committed another brutal rape where he raped that victim while he had a gun. Since the time of the two rapes in 1999, the state indicated that Vales had many other convictions, including felonious assault, burglary, having a weapon while under disability, trespass, and failure to verify.

{¶24} Defense counsel pointed out that the aggravated burglary had been reduced to aggravated trespassing.

{¶25} The victim spoke to the court. She told the court that Vales had affected her "life for 15 years now." She said that she was 16 years old at the time of the rape. She stated that Vales "took something from [her] that [she] could never get back, [her] purity, [her]

innocence, [her] virginity." She explained that she had "flashbacks, intimacy issues, trust issues, paranoia, and much depression." She stated that she was not happy that Vales "copped out to attempted rape," as "[t]here was no attempted about it." She said that Vales carried her from the living room and threw her onto a mattress on the floor. He proceeded to rape her while covering her face with a pillow so that she could not scream. She stated that she did not come forward sooner because Vales "put fear in [her] like no other." He told her that he would kill her if she told anyone. After the incident, Vales followed her around at school, "intimidating and waiting for [her] at her locker." She was so afraid that she quit school and obtained a GED. She requested the court give Vales the maximum penalty.

{¶26} The trial court merged the attempted rape and abduction offenses; the state elected to sentence Vales on the attempted rape. The trial court sentenced Vales to eight years in prison for rape and 36 months for intimidating the victim, and ordered that they be served consecutive to each other and consecutive to 36 months for failure to provide notice of his change of address, for a total of 14 years in prison. The trial court further notified Vales that he would be subject to five years of mandatory postrelease control for the attempted rape and intimidating the victim and three years of discretionary postrelease control for failure to provide notice of his change of address. The trial court also labeled Vales a sexual predator under Megan's Law after holding a separate hearing on the matter. It is from this judgment that Vales appeals.

Motion to Withdraw Plea

**{¶27}** In his first assignment of error, Vales contends that the trial court erred when it denied his presentence motion to withdraw his plea.

**{¶28}** A motion to withdraw a guilty plea is governed by the standards set forth in Crim.R. 32.1, which provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

**{¶29}** Generally, a presentence motion to withdraw a guilty plea should be freely and liberally granted. *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). A defendant, however, does not have an absolute right to withdraw a plea prior to sentencing, and it is within the sound discretion of the trial court to determine what circumstances justify granting such a motion. *Id.* In ruling on a presentence motion to withdraw a plea, the court must conduct a hearing and decide whether there is a reasonable and legitimate basis for withdrawal of the plea. *Id.* at 527. This court has held that a trial court does not abuse its discretion in overruling a motion to withdraw a plea:

> "(1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request."

*State v. Tucker*, 8th Dist. Cuyahoga No. 97981, 2012-Ohio-5067, ¶ 7, quoting *State v. Peterseim*, 68 Ohio App.2d 211, 214, 428 N.E.2d 863 (8th Dist.1980), paragraph three of the syllabus.

{¶30} We find no abuse of discretion in the trial court's denial of Vales's plea withdrawal request because the parameters set forth in *Peterseim* are met here: (1) Vales was represented by highly competent counsel, two attorneys in fact, (2) he was afforded a full Crim.R. 11 hearing before he entered into the plea, (3) he was given a full and impartial hearing on his motion to withdraw his plea, and (4) the record reveals that the court gave full and fair consideration to his plea withdrawal request.

{¶31} Moreover, at the plea hearing, Vales informed the trial court that he was satisfied with his representation and that he understood that by pleading guilty, he was admitting the allegations as set forth in the plea agreement. One of Vales's attorneys further informed the trial court at the hearing on Vales's motion to withdraw that she had been satisfied at the plea hearing that the trial court fully complied with Crim.R. 11, and that Vales understood everything that occurred at the plea hearing.

{¶32} Accordingly, we overrule Vales's first assignment of error.

Megan's Law Hearing

{¶33} In his second assignment of error, Vales argues that the trial court erred when it found him to be a sexual predator. Former R.C. 2950.01(E)(1) defines a sexual predator as

"[a] person [who] has been convicted of or pleaded guilty to committing a sexually oriented offense * * * and is likely to engage in the future in one or more sexually oriented offenses." Specifically, Vales maintains that there was not clear and convincing evidence that he would be likely to commit a future sexually oriented offense.

{¶34} In making a determination as to whether an offender is a sexual predator, the trial court must look to and consider all relevant factors pursuant to R.C. 2950.09(B)(3), including:

(a) The offender's or delinquent child's age;

(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;

(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;

(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;

(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;

(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;

(g) Any mental illness or mental disability of the offender or delinquent child;

(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented

offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;

(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;

(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct.

{¶35} The foregoing statutory criteria are intended to aid the trial court, which must determine by clear and convincing evidence whether an offender is likely to commit one or more sexually oriented offenses in the future. Clear and convincing evidence is more than a mere preponderance of the evidence, yet does not rise to the level of evidence beyond a reasonable doubt. *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). Clear and convincing evidence is evidence that "'produces in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State v. Campbell*, 11th Dist. Lake No. 99-L-012, 2000 Ohio App. LEXIS 6092, *7 (Dec. 22, 2000), quoting *Cross* at paragraph three of the syllabus. Thus, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).

{¶36} In this case, the trial court found that Vales had previously been convicted of rape, where he used a gun in that rape (the victim was 12 years old in that case). The trial court further found that in the present case, attempted rape, Vales used a pillow as a weapon to quiet

her during the rape. The court further found that the victim was so fearful of Vales after the rape that she moved away.

{¶37} Vales argues that the trial court's findings are not supported by clear and convincing evidence. He contends that the following mitigating factors weighed against him being labeled a sexual predator: (1) he did not use drugs or alcohol to impair the victim; (2) he did not use a deadly weapon as part of the offense; (3) this case did not involve multiple victims; (4) he was approximately 16 years old when this offense occurred; and (5) he demonstrated a willingness to change through education, despite his troubled past.

{¶38} First, we disagree with Vales that he did not use a deadly weapon during the rape. We agree with the trial court that placing a pillow over someone's face to quiet them can cause death. And while Vales is correct that the other factors indicate that he is less likely to reoffend, "'[a] trial court may find an offender to be a sexual predator even if only one or two statutory factors are present, so long as the totality of the relevant circumstances provides clear and convincing evidence that the offender is likely to commit a future sexually-oriented offense.'" *State v. Bagnall*, 11th Dist. Lake No. 2005-L-029, 2006-Ohio-870, ¶ 9, quoting *State v. Randall*, 141 Ohio App.3d 160, 166, 750 N.E.2d 615 (11th Dist.2001).

{¶39} After reviewing the record on appeal, we conclude that the trial court had more than enough evidence to label appellant a sexual predator. The trial court considered the violent nature of Vales's actions. Vales held a pillow over the victim's head during the rape,

and then threatened to kill her after the rape. The trial court further considered Vales's prior rape, where he used a gun while raping a 12-year-old victim, as well as Vales's extensive criminal record

**{¶40}** Thus, the trial court balanced the factors presented and determined that there was clear and convincing evidence that appellant is likely to reoffend. As such, we conclude that based on the foregoing factors and the totality of the relevant circumstances, the trial court properly classified appellant as a sexual predator.

**{¶41}** Vales's second assignment of error is overruled.

<u>Consecutive Sentences</u>

**{¶42}** In his third assignment of error, Vales argues that the record does not support the trial court's findings under R.C. 2929.14(C)(4) to impose consecutive sentences. He maintains that the mitigating factors in this case weigh against imposition of consecutive sentences.

**{¶43}** R.C. 2953.08(G)(2) provides that our review of felony sentences is not an abuse of discretion. An appellate court must "review the record, including the findings underlying the sentence or modification given by the sentencing court." *Id.* If an appellate court clearly and convincingly finds either that (1) "the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4)]," or (2) "the sentence is otherwise contrary to law," then "the appellate court may increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing." *Id.*

{¶44} R.C. 2929.14(C)(4) requires trial courts to engage in a three-step analysis when imposing consecutive sentences. First, the trial court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender." *Id.* Next, the trial court must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.* Finally, the trial court must find that at least one of the following applies: (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction imposed under R.C. 2929.16, 2929.17, or 2929.18, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *Id.*

{¶45} We disagree with Vales that the record does not support the trial court's imposition of consecutive sentences. Although Vales argues that there are many mitigating circumstances, the fact remains that his criminal history is extensive, including the prior rape case in 1999, where he raped a 12 year old with a gun. He also has several other cases where firearms were involved, including attempted felonious assault with a one-year firearm

specification, improperly discharging a firearm into a school or habitation, and having weapons while under a disability. Further, the trial court noted that Vales was extremely brutal when he raped the victim, using a pillow to cover her face during the act, and threatening and intimidating her after the act. Accordingly, we find that the record supports the trial court's findings under R.C. 2929.14(C)(4).

{¶46} Vales's third assignment of error is overruled.

{¶47} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

MARY EILEEN KILBANE, P.J., CONCURS;
TIM McCORMACK, J., DISSENTS (SEE SEPARATE OPINION)

TIM McCORMACK, J., DISSENTING:

{¶48} I respectfully dissent. My reading of the full record reflects that appellant repeatedly and clearly communicated his position that the state be required to prove beyond a reasonable doubt that he was guilty in a case where the victim first reported the crime 14 years later. Respectfully, this is a case where the trial court should have applied the "freely and liberally granted" standard set forth in *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992), and allowed the defendant to withdraw a pressured and hastily entered guilty plea.

{¶49} A reading of the record shows that the victim alleged that the appellant raped her after school one day in 1999, when he was 17 and she was 16. She alleged that, while walking home with a friend, appellant, who was a common acquaintance, joined them. All three walked to an apartment building where both her friend and appellant lived. Her friend went to his own apartment, and she and appellant went to appellant's apartment. According to the victim, after the two sat on the living room couch and talked for awhile, appellant carried her from the sofa into a bedroom, threw her onto the mattress, pulled her pants down, and raped her. The victim alleged that appellant folded the pillow partially over her face to prevent her from screaming and, afterward, told her he would kill her if she told anyone. The

victim also alleged that appellant would follow her around at school after the incident. She reported that she dropped out of school and moved out of town for two years because of the intimidation.

{¶50} Fourteen years later, the victim reported the incident to the police. Appellant was thereafter indicted for rape, kidnapping, and victim intimidation. Shortly after receiving the criminal complaint, appellant surrendered himself and pleaded not guilty. This is the first of the five occasions he claimed innocence to the court. On July 22, 2014, the trial court held a pretrial proceeding at which the prosecutor informed the court of the plea deal being offered to the defendant. Under the plea deal, the state would reduce the rape charge to attempted rape, a second-degree felony punishable by 2 to 8 years, and delete the sexually violent predator specification. The state would also reduce kidnapping to abduction, a third-degree felony punishable by 9 to 36 months. The record reflects appellant's second protestation of innocence here: appellant told the court he would not accept the plea deal, the court quickly responded: "All right. Let's go. We will go to trial." The prosecutor emphasized that if the defendant opted to go to trial, he could possibly receive a life term. Appellant again, for the third time, protested his innocence, to which the court responded, "Okay. We'll have a panel for you at 1:15 p.m."

**{¶51}** The transcript then reflects that, after a lunch recess, the proceeding resumed and a substitute judge presided over the preceding.   The state informed the court that appellant changed his plea and would now plead guilty under the plea bargain offered by the state.   The court then engaged appellant in a Crim.R. 11 colloquy, and appellant pleaded guilty.   The court referred the matter to the probation department for purposes of a presentence investigation report.

**{¶52}** Within a month and before the scheduled sentencing date, appellant filed a motion to withdraw his guilty plea.   This is the fourth time he claimed innocence and expressed his desire to go to trial.    He stated in the motion that his plea was an emotional decision, under great pressure of the imminent trial and the possibility of a life sentence.

**{¶53}** On September 8, 2014, the matter was scheduled for sentencing. The originally assigned judge presided over the proceeding.   Prior to sentencing, the court briefly entertained appellant's motion to withdraw.   For the fifth time, appellant proclaimed his innocence:   appellant's counsel stated to the court that appellant's guilty plea was made under the pressure of imminent trial and possibility of a life sentence and, in light of the staleness of the case and its impact on the credibility of the witness, he wished to withdraw his plea.   The state opposed it.   The transcript then reflects the following by the court:

THE COURT:　　　Let the record　indicate I've had the opportunity to review the motion[] * * *; had the opportunity to review the probation report; I had the opportunity to engage Mr. Vales in Criminal Rule 11.　And fortunately, in Criminal Rule 11 I not only ask an individual how do they plead, I always ask the individual if he is in fact guilty.　And if a defendant tells me that he is not guilty, then we stop any plea discussions instantly and we proceed to trial.

　　　When I asked Mr. Vales if he was in fact guilty, he said yes. So, therefore, the Court is aware that Mr. Vales was knowledgeable, that this was voluntary, that he was informed of his rights, and that he made a knowing, intelligent, informed plea; therefore, that motion is denied.　I asked him if he did it, he said he did.

{¶54} The trial court was incorrect.　It was mistaken about the record, as immediately pointed out by appellant's counsel.　At the July 22, 2014 proceeding, appellant initially proclaimed his innocence before the proceeding was adjourned; when the substitute judge took the plea after the proceeding resumed, there was no inquiry into appellant's actual guilt or innocence before the Crim.R. 11 colloquy.

{¶55} After being informed that a different judge had taken the plea, the trial court stated, "What is it that he didn't understand on Rule 11?　Everyone who comes in the Justice Center is emotional * * *."　After a brief exchange with appellant's counsel, during which the court's inquiry was only focused on whether appellant's counsel was satisfied with the Rule 11 colloquy, the trial court proceeded to sentencing.　Appellant received a prison term of 11 years.

{¶56} Crim.R. 32.1 requires a showing of "manifest injustice" when a defendant wishes to withdraw a guilty plea after sentencing. The notion behind this requirement is "to discourage a defendant from pleading guilty to test the weight of potential reprisal, and later withdraw the plea if the sentence was unexpectedly severe." *State v. Wyley*, 8th Dist. Cuyahoga No. 78315, 2001 Ohio App. LEXIS 1155 (Mar. 15, 2001), citing *State v. Caraballo*, 17 Ohio St.3d 66, 67, 477 N.E.2d 627 (1985). In contrast, the court is encouraged to "freely and liberally" grant a presentence motion to withdraw a guilty plea. *Xie*, 62 Ohio St.3d at 527, 584 N.E.2d 715. As the Supreme Court of Ohio explained, "[a] criminal defendant's choice to enter a plea of guilty or no contest is a serious decision. The benefit to a defendant of agreeing to plead guilty is the elimination of the risk of receiving a longer sentence after trial. But, by agreeing to plead guilty, the defendant loses several constitutional rights." *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3478, 893 N.E.2d 462, ¶ 25, citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and *State v. Nero*, 56 Ohio St.3d 106, 107, 564 N.E.2d 474 (1990). Because of the gravity of a guilty plea under which a defendant relinquishes significant constitutional rights, in ruling on a presentence motion to withdraw a plea, the trial court must conduct a hearing and decide whether there is a reasonable and legitimate basis for withdrawal of the plea. *Xie* at 527.

**{¶57}** The courts have held that a trial court's denial of a presentence motion to withdraw is not an abuse of discretion when the record reflects: (1) the defendant is represented by highly competent counsel, (2) the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) the court gives full and fair consideration to the plea withdrawal request. *State v. Peterseim*, 68 Ohio App.2d 211, 214, 428 N.E.2d 863 (8th Dist.1980). The courts have in addition considered factors such as whether the motion was made timely; whether the motion states specific reasons for withdrawal; whether the defendant understood the nature of the charges and the possible penalties; and whether the defendant was perhaps not guilty or had a complete defense, or whether the state would suffer prejudice if the defendant is allowed to withdraw the plea. *State v. Benson*, 8th Dist. Cuyahoga No. 83718, 2004-Ohio-1677, ¶ 9; *State v. Sellers*, 10th Dist. Franklin No. 07AP-76, 2007-Ohio-4523, ¶ 34. This list "is not exhaustive, and other factors will appear to trial and appellate courts depending upon the merits of each individual case." *State v. Fish*, 104 Ohio App.3d 236, 240, 661 N.E.2d 788 (1st Dist.1995).

**{¶58}** Here, the immense pressure faced by appellant cited in his motion to withdraw is amply reflected in a reading of the transcript: when he proclaimed his innocence in the pretrial immediately before the plea

proceeding, the trial court emphasized the imminence of the jury trial and the prosecutor stressed the risk of a life term should he be found guilty by the jury. Appellant also cited the significant lapse of time between the alleged incident and its reporting and effect of the case's staleness on the credibility of the witness as factors in his request to change his plea. Under these circumstances, the need for a "complete and impartial" hearing on Vales's timely filed motion to withdraw his guilty plea is compelling.

{¶59} A review of the record, however, does not demonstrate that the trial court gave a "full and fair consideration" to appellant's request to be proven guilty beyond a reasonable doubt by his peers. There is no evidence that before denying the motion to withdraw, the trial court reviewed the file to ascertain if appellant voluntarily entered into his guilty plea — the trial court was not even aware that a different judge had taken the plea. The court initially denied the motion to withdraw summarily on a mistaken belief that appellant had told the court he was guilty of the offenses.[2] After being corrected, the trial court merely ensured the defense counsel was satisfied with the Rule 11 colloquy before affirming its denial of the motion to withdraw.

---

[2] In *State v. Robinson*, 8th Dist. Cuyahoga No. 89651, 2008-Ohio-4866, this court reversed the trial court's denial of a defendant's motion to withdraw a guilty plea. As part of the rationale for the reversal, this court noted that the judge who denied the presentence motion to withdraw the plea was not the same judge who accepted the plea and that nothing in the record indicated the former was fully aware the plea was entered voluntarily and knowingly. *Id.* at ¶ 31–32.

{¶60} The right guaranteed by the United States Constitution's Sixth Amendment and the corresponding language of the Ohio Constitution that any person accused of a violation of criminal law is entitled to a full trial with the outcome determined by a jury of her or his peers is tempered hourly in nearly all courthouses statewide by the adoption of the expedient approach of avoiding trials where possible. Foregoing full trials is almost always the path preferred by both the accused's counsel and the prosecutor, as well as, the bench. Many solid reasons of judicial economy are understood for the use of the accelerated approach. Avoidance of full trial is so favored in reality that the accused who insists upon being proven guilty beyond reasonable doubt is too often treated with disdain, disbelief, and, too often, scorn. While both the constitutional guarantee of a jury trial and the principle of judicial economy, where appropriate, are essential to the fair administration of justice, when the two are in conflict only one can be and is preeminent — that being the fundamental constitutional guarantee that one is assured of a jury of their peers should they be subject to criminal charges and make their request for a jury trial clear and timely.

{¶61} Certainly, it is within the sound discretion of the trial court to determine the circumstances that justify granting a motion to withdraw a guilty plea. However, we must always operate with the understanding that a presentence motion to withdraw a guilty plea need not establish "manifest

injustice," but is to be liberally granted. Here, appellant repeatedly communicated his desire to have his guilt proven by the state: twice at the pretrial hearing and each time immediately followed by a rejoinder from the court that a jury trial would be imminent. His pre-plea protestation, the substitution of the trial judge in the plea taking, and the trial court's confusion as to the record, in cumulation, necessitates a complete and impartial hearing on appellant's motion to withdraw. The prejudice to the state in allowing appellant to withdraw his guilty plea at the time was minimal while the harm to him in not being able to hold the state to its burden of proving his guilt beyond a reasonable doubt is grave. All in the courtroom but the convicted are free to go home to dinner that night.

{¶62} Under the circumstances of this case, without a complete and impartial hearing, the trial court abused its discretion in denying appellant's motion to withdraw his guilty plea. For these reasons, I respectfully dissent.