[Cite as *Johnson v. Miller*, 2018-Ohio-2113.]


**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY**

| | | |
|---|---|---|
| MABEL L. JOHNSON | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2017-CA-18 |
| | : | |
| v. | : | Trial Court Case No. 2017-DV-192 |
| | : | |
| LARRY W. MILLER, JR. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 1st day of June, 2018.

. . . . . . . . . .

JAY M. LOPEZ, Atty. Reg. No. 0080819, 18 East Water Street, Troy, Ohio 45373
    Attorney for Plaintiff-Appellee

JOHN R. FOLKERTH, JR., Atty. Reg. No. 0016366, 109 North Main Street, 500
Performance Place, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Larry Miller appeals from a civil stalking protection order entered against him.  Miller contends that the evidence submitted to the trial court was insufficient to establish the necessary elements of R.C. 2903.211 by a preponderance of the evidence.

{¶ 2} We conclude that the trial court's order in all respects but one is supported by sufficient evidence and does not constitute an abuse of discretion. The exception, constituting an abuse of discretion, is the provision that Miller, even if Johnson is not present, may not visit the homes of Johnson's relatives.

## I. Facts and Procedural History

{¶ 3} Miller and Mabel Johnson lived together, in a romantic relationship, for 23 years.  They have no children as a result of their relationship which ended in 2016.

{¶ 4} On July 5, 2017, Johnson filed a petition for an ex parte civil stalking protection order (hereinafter "CSPO") against Miller.  The court granted the ex parte CSPO and referred the matter to a magistrate for a full hearing, which was held on July 12, 2017.  Both parties attended the hearing without counsel.  Miller, Johnson, and Johnson's daughter, Angela Johnson, testified.

{¶ 5} According to Angela, she and her children consider Miller to be a member of their family.   Angela testified that she wanted to keep Miller involved in the lives of her children as they consider him to be their grandfather.   However, she testified that his behavior with Johnson has caused her to avoid him.   Angela testified that Miller began his harassing behavior after her mother recently decided to begin dating other men.   She

testified that both she and her mother told Miller that Johnson did not want any contact with him and that he should stay away from Johnson. She testified that Miller was hurt and sad, and that when he feels this way he tends to become angry and violent. Angela testified that in the past four months, Miller refused to stay away and showed up at Johnson's house at least twice. On one of those occasions, Angela was present when he appeared as Johnson was leaving for a trip. On the other occasion, Miller called Angela while he was outside Johnson's home and stated that Johnson "need[ed] to come out and talk to [him]." Tr. p. 12. She testified that Miller threatened that there would be "problems" if Johnson was with another man. Angela further testified that she and her mother had to change plans for a fireworks display because Miller showed up where they planned to be. Angela testified that since Miller started harassing Johnson, Johnson has become shaky and cries often. She testified that her mother appears stressed and scared. Angela testified that Johnson is afraid to be outside of her home and now keeps a firearm with her.

{¶ 6} Johnson testified that that since she told Miller to stay away from her, he has repeatedly called and texted her. She testified that he has threatened to come to her place of work, and to post items on Facebook in an attempt to negatively influence her employer. She testified that he has appeared at her home at least four times. On one occasion he came into her back yard, and on another occasion he sat outside of her home for 15 to 20 minutes. On two other occasions he left letters taped to her door. Johnson testified that she has observed Miller be physically aggressive with others and that she is scared of him and scared to leave her home.

{¶ 7} Miller also testified. He did not deny the fact that he had been told to stay

away from Johnson or that he continued to attempt to contact her. He also informed the court that he did not have any guns. He then stated that even if he had firearms, he would not obey any court order regarding their surrender. Miller also testified that he has sold the home Johnson and he previously resided in because of an incident that occurred when he aimed a gun at a neighbor's child.

{¶ 8} Following the hearing, the court issued a CSPO against Miller. It required him to stay 500 feet away from Johnson and to surrender any deadly weapons. The order also required that he not go to the homes of Johnson's family members. The CSPO is effective for five years. Miller appeals.

## II. Analysis

{¶ 9} Miller's sole assignment of error states as follows:

THE MIAMI COUNTY COMMON PLEAS COURT COMMITTED ERROR

WITH RESPECT TO THE ORDER OF PROTECTION ISSUED AGAINST

LARRY W. MILLER, JR.

{¶ 10} Miller contends that the evidence presented was not sufficient for the issuance of a civil stalking protection order. He argues that the evidence does not establish that he acted knowingly. He further contends that the record does not demonstrate that Johnson suffered mental distress. Finally, he contends the trial court abused its discretion with regard to the scope of the protection order.

{¶ 11} R.C. 2903.214(C)(1) allows a person to file a petition seeking relief against another person who has engaged in conduct constituting menacing by stalking in violation of R.C. 2903.211(A)(1). When assessing whether a civil stalking protection order should

issue, the trial court must determine whether the petitioner proved by a preponderance of the evidence that the respondent engaged in menacing by stalking. *Lane v. Brewster*, 12th Dist. Clermont No. CA2011–08–060, 2012–Ohio–1290, ¶ 50.

{¶ 12} Menacing by stalking is defined as "engaging in a pattern of conduct" that "knowingly cause[s] another person to believe that the offender will cause physical harm to the other person * * * or cause mental distress to the other person." R.C. 2903.211(A)(1). In order to establish a pattern of conduct, only two or more actions closely related in time are required. R.C. 2903.211(D)(1). "A person acts knowingly, regardless of purpose, when [he] is aware that [his] conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when [he] is aware that such circumstances probably exist." R.C. 2901.22(B). "Thus, in order to merit a civil protection order, the petitioner need not prove that the respondent intended to cause actual harm to the other person; instead, the evidence must show that the respondent knowingly engaged in a pattern of conduct that caused the other person to believe that the respondent will cause physical harm or that caused mental distress to the other person." (Citations omitted.) *Walker v. Edgington*, 2d Dist. Clark No. 07–CA–75, 2008-Ohio-3478, ¶ 23.

{¶ 13} "Mental distress" is defined in R.C. 2903.211(D)(2) as any of the following:

(a) Any mental illness or condition that involves some temporary substantial incapacity;

(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment,

psychological treatment, or other mental health services. * * *

{¶ 14} "Mental distress need not be incapacitating or debilitating." *Jenkins v. Jenkins*, 10th Dist. Franklin No. 06AP–652, 2007–Ohio–422, ¶ 19.   In determining whether a petitioner has presented appropriate evidence, the trial court does not need expert testimony, but "may rely on its knowledge and experience in determining whether mental distress has been caused."   *Id.*, quoting *Smith v. Wunsch*, 162 Ohio App.3d 21, 2005–Ohio–3498, 832 N.E.2d 757, ¶ 18 (4th Dist.)

{¶ 15} We review the trial court's decision to grant a CSPO under an abuse of discretion standard of review.   *Hangen v. McCaleb*, 2d Dist. Greene No. 2005-CA-54, 2006-Ohio-776, ¶ 7.   A trial court abuses its discretion when its "attitude is unreasonable, arbitrary or unconscionable."   *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).   When applying the abuse of discretion standard, an appellate court may not merely substitute its judgment for that of the trial court.   *Randall v. Randall*, 2d Dist. Darke No. 1739, 2009-Ohio-2070, ¶ 10.

{¶ 16} The testimony establishes facts upon which the trial court could reasonably rely in finding that Miller, after being told by both Johnson and Angela to stay away from Johnson, engaged in a pattern of conduct consisting of repeatedly texting, calling and threatening Johnson during the four months preceding the hearing on the protection order.   The evidence further demonstrates that he appeared at her residence, without her permission, on at least four occasions.   On one occasion, he came into her back yard.   On another occasion, he sat outside her house for approximately 15 to 20 minutes.   On two other occasions he taped letters to her door.   Miller also appeared at a location where he knew Johnson and her family would be watching fireworks.   Miller told Johnson

that he would come to her workplace and make posts on Facebook in an attempt to influence her employer's opinion of her.

{¶ 17} Miller does not contest the court's finding that he engaged in a pattern of conduct. However, he claims that he did not knowingly act to cause Johnson mental distress. Instead, he contends that the evidence only demonstrates that he continued to contact Johnson in a non-threatening manner to let her know that he did not wish to terminate the relationship. However, the evidence in the record establishes that his conduct went beyond benign contact. Johnson and her daughter made it clear to Miller that Johnson did not want any further contact with him. Miller does not deny that he was told to stay away from Johnson, but despite this, he continued his pattern of behavior. Based upon this record, we cannot say that the court abused its discretion in finding that Miller acted knowingly.

{¶ 18} Miller next challenges the finding that Johnson suffered mental distress. In support, he claims this finding is belied by the fact that Johnson came to his home, two or three weeks prior to the hearing, to visit him. However, the record does not support the claim that Johnson came to visit him. Instead, the record establishes that Johnson merely drove her granddaughter to Miller's home. The record supports a finding that Johnson immediately drove away from the home after her granddaughter exited the car. Further, there is evidence in the record that Johnson is afraid to leave her home and feels the need to carry a gun with her for protection.

{¶ 19} The magistrate gave more credence to the testimony of Johnson and her daughter, Angela, than that of Miller. The credibility of witnesses and the weight to be given to their testimony are primarily matters for the trier of the facts to resolve. *State v.*

*DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. We note that both Johnson and her daughter appear, from the record, quite sincere and credible, while Miller appears inherently incredible. We conclude that the trial court did not abuse its discretion in finding that Miller's conduct constitutes menacing by stalking.

{¶ 20} We next address whether the trial court abused its discretion with regard to the scope of the protection order. Miller objects to the restriction that he surrender any deadly weapons and that he not go to the homes of Johnson's relatives. Given Miller's testimony regarding pointing a gun at a child, along with Angela's testimony that Miller acts angry and violent, we cannot say that this restriction with respect to weapons constitutes an abuse of discretion. In any event, according to Miller's own testimony, the issue is moot as he denied owning any guns. We, however, find that the trial court abused its discretion by ordering that Miller, even in Johnson's absence, cannot visit the homes of Johnson's relatives. The CSPO prevents Miller from being within 500 feet of Johnson, with this provision obviously preventing Miller from visiting Johnson's relatives, at their homes or otherwise, when Johnson is in the company of her relatives. Thus, the purpose of the CSPO – to protect Johnson – is not advanced by preventing Miller, even when Johnson is not present, from visiting the homes of Johnson's relatives.

{¶ 21} We conclude that the civil stalking protection order issued by the trial court is supported by the evidence, and does not, with one exception, constitute an abuse of discretion. The sole assignment of error is overruled in part and sustained in part.

### III. Conclusion

{¶ 22} Miller's sole assignment of error is sustained, in part, and overruled, in part.

The provisions of the Civil Stalking Protection Order are affirmed with the exception of the order's absolute prohibition regarding Miller's ability to visit the homes of Johnson's relatives, even when Johnson is not present.   This matter is remanded to the trial court for the modification of this provision to reflect that Miller is prohibited from visiting the homes of Johnson's relatives only when Johnson is present at the relatives' homes.

. . . . . . . . . . . . .


DONOVAN, J. and FROELICH, J., concur.


Copies mailed to:

Jay M. Lopez
John R. Folkerth, Jr.
Hon. Christopher Gee