OPINION *Page 2 
{¶ 1} In these consolidated cases, Natalie A. Joseph, appellant, appeals from judgments of the Franklin County Court of Common Pleas, in which the court issued a civil stalking protection order ("CSPO") against appellant and in favor of Marek A. Perry; issued a CSPO against appellant and in favor of Keyla Coles; and denied a CSPO filed by appellant against Perry. Neither Perry nor Coles have filed appellate briefs.
 {¶ 2} Appellant and Perry formerly dated each other for approximately five years, and the relationship ended in January 2004. Perry then began living with his new girlfriend, Coles. In April 2004, appellant sought and obtained a monetary judgment for approximately $700 against Perry. Although Perry paid most of the judgment, apparently about $150 of the judgment remained unpaid. In a 2005 case that is not the basis of the current appeal, Perry sought a CSPO against appellant based upon appellant's constant attempts to collect the remainder of the judgment. That CSPO was denied on March 3, 2005, although the court noted Perry had made clear that he wanted no further contact with appellant, and appellant would be wise to cease her objectionable conduct to avoid any further legal difficulties. Following this initial CSPO action, appellant moved into an apartment whose entrance was beside and living quarters were above the apartment of Perry and Coles.
 {¶ 3} On November 22, 2006, appellant filed a petition for a CSPO against Perry, claiming Perry had threatened her and kicked her apartment door. On November 24, 2006, both Perry and Coles filed petitions for a CSPO against appellant, claiming appellant was harassing and threatening them and disturbing them in their apartment by playing loud music, stomping her feet, and putting holes in their common walls. A hearing *Page 3 
was held on all three petitions, and on February 14, 2007, the magistrate issued a decision granting Perry's and Coles' CSPOs but denying appellant's CSPO. On February 27, 2007, appellant filed objections to the magistrate's decision. On March 19, 2007, the trial court issued CSPOs in favor of Perry and Coles and against appellant, effective until February 14, 2012. On March 27, 2007, the trial court again entered CSPOs in favor of Perry and Coles, effective until November 28, 2011, and overruled appellant's objections. Appellant appeals these judgments, and the three appeals have been consolidated. Appellant asserts the following assignments of error:
 1. The Trial Court abused its discretion and committed reversible error by granting a continuance of the January 8, 2007 hearing despite Appellant's objection.
 2. The Trial Court's Findings of Fact and Conclusions of Law failed to establish the basic elements of ORC 2903.211 as a prerequisite to the issuance of a protection order pursuant to ORC 2903.214 and constituted an abuse of discretion.
 3. The Trial Court erred as a matter of law in denying Appellant's petition for a Civil Stalking Protection Order.
 4. The Trial Court abused its discretion and erred as a matter of law when it modified the terms and conditions of its order of March 19, 2007 granting the Civil Stalking Protection Orders.
 5. The Trial Court erred by failing to consider the court transcript when ruling on Appellant's objections to the Magistrate's Decision.
 {¶ 4} Appellant argues in her first assignment of error that the trial court abused its discretion and committed reversible error when it granted a continuance of the January 8, 2007 hearing despite appellant's objection. The granting or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge; thus, an appellate court must not reverse the denial of a continuance unless there has *Page 4 
been an abuse of discretion. State v. Ahmed, 103 Ohio St.3d 27,2004-Ohio-4190, at ¶ 44. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 218. In determining whether a trial court has abused its discretion, a court of appeals may not substitute its judgment for that of the trial court. Id. Further, in evaluating a motion for continuance, several factors can be considered: the length of delay requested, prior continuances, inconvenience, the reasons for the delay, whether the defendant contributed to the delay, and other relevant factors. State v. Landrum (1990), 53 Ohio St.3d 107, 115.
 {¶ 5} In the present case, we find the trial court did not abuse its discretion when it granted a continuance of the January 8, 2007 hearing until February 7, 2007. The trial court indicated that its bases for granting the continuance were Perry and Coles had recently obtained counsel and appellant's counsel was unavailable. These are not unreasonable or arbitrary reasons for continuing the hearing. Further, the length of delay requested was reasonable, there had been only one prior continuance, there was no apparent inconvenience or prejudice to the parties in granting the short continuance, and Perry and Coles did not appear to request the continuance as a delaying tactic. Additionally, we also note that, in granting an earlier continuance from the November 30, 2006 hearing, the trial court extended appellant the same courtesy to continue the matter to obtain counsel, over the objections of Perry and Coles. For these reasons, we find the trial court did not abuse its discretion when it granted the continuance. Appellant's first assignment of error is overruled. *Page 5 
 {¶ 6} Appellant argues in her second assignment of error that the trial court's findings of fact and conclusions of law failed to establish the basic elements of R.C. 2903.211 as a prerequisite to the issuance of a protection order pursuant to R.C. 2903.214 and constituted an abuse of discretion. Whether to grant a CSPO is within the discretion of a trial court. Jenkins v. Jenkins, Franklin App. No. 06AP-652,2007-Ohio-422, at ¶ 13. R.C. 2903.214 governs the filing of a petition for a CSPO. R.C. 2903.214 provides that a petitioner seeking a CSPO must demonstrate that the respondent engaged in the offense of menacing by stalking, in violation of R.C. 2903.211. A preponderance of the evidence is required to support the issuance of a civil protection order.Jenkins, at ¶ 17.
 {¶ 7} The menacing by stalking statute prohibits two types of behavior. Specifically, R.C. 2903.211 provides that, "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211(A)(1). Thus, menacing by stalking involves either behavior that causes the victim to believe that he or she will be physically harmed, or behavior that causes mental distress to the victim. To grant a civil protection order, the petitioner need not prove that the respondent intended to cause actual harm to the other person. Jenkins, at ¶ 15, citingGuthrie v. Long, Franklin App. No. 04AP-913, 2005-Ohio-1541. Neither purpose nor intent to cause physical harm or mental distress is required. Id., at ¶ 16. It is enough that the person acted knowingly. Id. Further, a pattern of conduct is defined as two or more actions or incidents closely related in time. Id., at ¶ 18, citing R.C.2903.211(D)(1). *Page 6 
However, the incidents need not occur within any specific temporal period. Id., at ¶ 18, citing R.C. 2903.211(D)(2).
 {¶ 8} In the present case, the crux of appellant's argument is that the CSPOs were granted in error because she never made threats of physical harm, and Coles and Perry were never in fear of physical danger. However, as explained above, neither physical harm nor threats of physical harm are necessary. All that was necessary was that appellant caused Coles and Perry to believe that she would cause mental distress. For purposes of the statute, mental distress includes any condition that involves some temporary substantial incapacity or which would normally involve treatment by a mental health professional, whether or not the person actually sought treatment or was treated. Id. Mental distress need not be incapacitating or debilitating.Jenkins, supra, at ¶ 19. Further, expert testimony is not required to find mental distress. Id. A trial court is permitted to rely on its knowledge and experience in determining whether mental distress has been caused. Id., at ¶ 19, citing Smith v. Wunsch, 162 Ohio App.3d 21,2005-Ohio-3948, at ¶ 18; Middletown v. Jones, 167 Ohio App.3d 679,2006-Ohio-3465, at ¶ 7. Accordingly, to show that a defendant violated R.C. 2903.211 and is subject to a civil protection order under R.C.2903.214, the petitioner must only show that the respondent engaged in conduct that he/she knew would probably cause the complainant to believe that he/she would cause him/her to suffer mental distress.Jenkins, at ¶ 17, citing State v. Barnhardt, Lorain App. No. 05CA-008706, 2006-Ohio-4531, at ¶ 10.
 {¶ 9} Here, the magistrate found that appellant had caused Coles and Perry mental distress, and we find the record supports this finding. Perry testified that he and Coles moved into their current apartment in March 2005. In November 2006, Perry *Page 7 
claimed appellant left notes on their apartment door and on the car of one of Perry's friends. One such note was a printout of Perry's photograph and criminal record. Another note indicated: "STUDIES SHOW THAT WOMEN WHO HAVE AN OBEIST [sic] MOTHER TEND TO FOLLOW IN THAT SAME PATTERN[.] IF YOU NOTICE A LOVED ONE GAINING WEIGHT OR GETTING CHUNKY, REMIND HER THAT SHE WILL END UP LOOKING LIKE HER MOTHER . . . AN IMAGE WHICH SHE HAS FOUGHT HARD TO DISPELL [sic] [.]" The day he found the notes on his door, there were also mounds of dirt and mud on the ground in front of his door. The dirt on his doorstep embarrassed and humiliated him. The same day, after appellant played loud music and stomped on her floor, Perry called the police, who came and spoke to the parties. Perry twice contacted the city attorney's office to file complaints regarding the notes. Perry also testified that he has seen appellant outside his front door, and she has made statements such as, "better be careful," and "[y]ou better leave. You better leave here cause [sic] I'm never going to leave you alone. There's nothing you can do about it." Perry felt threatened by her statements and felt it was not safe for his family or son to come to his home. Perry stated he has had to call off work twice because appellant would play "extremely loud" music, stomp her feet on her floor, and knock on the walls at night. Perry called the police four times because of appellant's loudness, and he has complained to the apartment manager. Perry stated appellant's irrational actions scared him. He feared appellant would harass him with a weapon. Perry also presented evidence from a March 2005 letter sent by appellant demanding payment for the prior judgment against Perry. The letter stated at the bottom: "A Kind and Gentle Response Turns Away Wrath[.]" In Spring 2006, appellant followed Coles and Perry to a store and then waited for them in her car in the *Page 8 
parking lot near Perry's car. Perry also stated that appellant followed him home from work one day, and pulled beside his vehicle on Steltzer Road near his apartment.
 {¶ 10} Coles testified that, when she first started dating Perry, appellant text messaged her cell phone incessantly, and after appellant was asked by the prosecutor's office to cease text messaging her, appellant sent her e-mails. Coles also believed appellant put condoms and panties on Coles' car to harass her. Coles testified that she and Perry moved into their apartment at night so that no one would know where they had moved, but within one week of moving, appellant had posted a note with the judgment amount on their front door. Coles also stated that at least four or five times per week, appellant plays loud music. One and one-half weeks prior to their filing the present cases, Coles found five holes in the parties' common wall that had come from the other side. Coles also corroborated Perry's claim that appellant followed them to stores and waited for them in her car. Coles testified that appellant also filed a HIPPA complaint against her, claiming Coles was accessing information about her through her employment at a healthcare company, although an investigation by Coles' employer found that she had not accessed appellant's information. As for the photograph and criminal record printout that was on their apartment door, Coles could not determine any way that the public could access that information, so she presumed appellant, who works at a law firm, had obtained it through special channels. Coles admitted she called appellant's employer to discuss the matter. Coles stated she was not scared by the contents of the notes or vandalism of her car, but by the irrational mentality of appellant. Coles stated appellant has caused her mental distress. At times, she has not been able to eat or sleep, and her performance at work was low. *Page 9 
 {¶ 11} Kenneth Stoffer, the manager of the parties' apartment complex, testified there were three or four units available when appellant started living in the apartment complex, and the units were generally the same. Appellant chose which apartment she wished to live in. He stated he offered to allow appellant to move to another apartment with no penalty to try to resolve the issues between the parties, but appellant stated she would rather just move from the complex.
 {¶ 12} Appellant denied nearly every accusation raised by Perry and Coles. Appellant denied that she ever followed Perry. She testified that she never pulled up beside Perry on Steltzer Road and did not follow him into a store or wait for him in a parking lot. She also denied she ever left any harassing notes on any cars. She stated the note about gaining weight was actually posted on her door, and she tore it off and threw it, believing Perry had posted it. She also denied putting the note with Perry's photo and criminal record on his door. Appellant further denied she ever told Perry he had better leave the apartment and that he was never going to get rid of her. She denied that she plays her music loudly. Appellant also testified that she used the "wrath" statement on the bottom of the payment demand because it was from the Bible and she liked it, although she admitted she did not use the statement on other letters. She stated Perry still owes her $154.24. She said the two broke up in January 2004, and she was upset because of Perry's infidelity, but she had no desire to resume a relationship with Perry. Appellant admitted that, after she had a "nine" out of ten stress level resulting from Coles' call to her employer, one and one-half months later, she moved in above Coles and Perry.
 {¶ 13} Nearly the entire case before the court centers on credibility. The magistrate concluded that the testimony offered by Perry and Coles was more credible and *Page 10 
reasonable than that offered by appellant. Although an appellate court is permitted to independently weigh the credibility of the witnesses, we must give great deference to the fact finder's determination of witnesses' credibility. State v. Wright, Franklin App. No. 03AP-470,2004-Ohio-677, at ¶ 11. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Id. Here, the magistrate, as the trier of fact, was in the better position to judge the credibility of the witnesses.
 {¶ 14} After reviewing the record, we have no reason to question the magistrate's credibility determinations. Finding the testimony of Coles and Perry credible, there was an abundance of evidence that appellant knowingly engaged in a pattern of conduct that caused Coles and Perry to believe that she would cause mental distress to them. That appellant moved into an apartment in such close proximity to Coles' and Perry's apartment after the court's earlier admonition is alone compelling evidence that appellant engaged in knowing conduct. Her claim that her moving to the apartment above Perry and Coles had nothing to do with their living there is not credible. Her testimony that she thought it was "no big deal" to live in the apartment above them is beyond dubious, given the history between the parties. Perry had earlier sought a CSPO against appellant, and only one and one-half months before she moved in, appellant claimed to have had a "nine" out of ten stress level because Coles telephoned her place of employment. These circumstances are not consistent with appellant's claim that she gave no consideration to the fact that Perry and Coles would be living below her when moving into the apartment. Despite appellant's claims to the contrary, it is difficult to fathom that the apartment into *Page 11 
which she moved was the only apartment in the area that fit her needs. Coupling this conduct with the harassing notes, appellant's following of Coles and Perry at various locations, the holes in the common wall, appellant's statements to Perry, the noise from appellant's apartment, and Coles' and Perry's testimony that they were scared of appellant's conduct clearly presents facts that demand a CSPO. Therefore, we find the trial court did not abuse its discretion when it granted CSPOs in favor of Coles and Perry and against appellant. Accordingly, appellant's second assignment of error is overruled.
 {¶ 15} Appellant argues in her third assignment of error that the trial court erred when it denied her petition for a CSPO. Appellant claims that Perry demonstrated he intended to incite fear in her when he approached appellant at her door and made harassing and threatening comments in November 2006, and when he later attempted to kick in her door the same evening. With regard to Perry's actions, appellant testified that, in November 2006, she noticed her ceramic pot and ceramic frog were smashed against her door and dirt from the pot was on the ground in front of her doorway. As she was about to enter her apartment, Perry opened his apartment door and told her she had better watch her back because someone was coming to get her. She believed Perry smashed the pot and frog, so she called the police. Appellant also testified that, after the police left her apartment, she was returning to her front door, and Perry opened his door and told her she should be scared. That same night, appellant was in her apartment talking on the telephone and walking around, and someone in Perry's apartment pounded on her floor several times. Appellant testified she stomped her feet several times, and then she heard someone kicking her front door. She stated she could not see who was kicking her door but she "knew" it was Perry because the pounding on her floor stopped *Page 12 
when the kicking of her door started. She called the police, and the same officer as earlier in the evening arrived with another officer. The police spoke with the parties. Appellant stated she is fearful of Perry.
 {¶ 16} Again, as with the second assignment of error, credibility is key. The magistrate found appellant's testimony not credible, and we have no reason to disturb that finding. In addition, the trial court found that appellant had not offered sufficient evidence to support her claim for a CSPO because, even if Perry did kick appellant's door after becoming angry at her regarding the noise above his apartment, such an incident would not establish a pattern of conduct. We agree that, even if we could presume that Perry kicked her door, such would not be sufficient to order a CSPO. Further, although, under certain circumstances, Perry's alleged threatening comments when considered in conjunction with the alleged kicking of appellant's door could be deemed a pattern of conduct, whether Perry actually did either action is not certain. Given the magistrate's credibility determination that Perry was more believable than appellant, we decline to find Perry engaged in a pattern of conduct designed to cause appellant distress. Therefore, appellant's third assignment of error is overruled.
 {¶ 17} Appellant argues in her fourth assignment of error that the trial court abused its discretion and erred as a matter of law when it modified the terms and conditions of its March 19, 2007 orders. On March 19, 2007, the trial court issued two CSPOs in favor of Coles and Perry and against appellant. The March 19, 2007 CSPOs were effective until February 14, 2012; contained no specific findings of fact; and, among other things, had a checked box prohibiting appellant from causing or encouraging any other person to do any act prohibited by the order. On March 27, 2007, the trial court issued two new *Page 13 
CSPOs in favor of Coles and Perry and against appellant. The March 27, 2007 CSPOs were effective until November 28, 2011, adopted the magistrate's findings of fact, denied appellant's objections, and found by a preponderance of the evidence that appellant knowingly engaged in a pattern of conduct that caused Coles to believe appellant would cause her physical harm or cause mental distress. Also, Coles' March 27, 2007 CSPO did not have the box checked that prohibited appellant from causing or encouraging any person to do any act prohibited by the order. Appellant argues that the trial court had no authority to modify the March 19, 2007 CSPOs by issuing the March 27, 2007 CSPOs.
 {¶ 18} The record does not specifically reveal why the trial court issued the March 27, 2007 CSPOs after issuing the March 19, 2007 CSPOs. However, because only the March 27, 2007 CSPOs indicated that appellant's objections to the magistrate's decisions were overruled, and because the March 27, 2007 CSPOs were entered the day after appellant filed the transcript, we presume the court did not realize appellant had filed objections as of the March 19, 2007 filing, and appellant's filing of the transcript called to the attention of the court that appellant had filed objections. Additionally, although there is no clear indication why the trial court changed the effective dates of the later orders, R.C. 3113.31(E)(3)(a) provides that all civil protection orders are valid until the date specified in the order, and that date cannot be more than five years from the date of issuance. It is possible that the effective dates of the first orders were determined based upon five years from the date of the magistrate's orders, while the later orders were determined based upon five years from the approximate date of the filing of the ex parte civil protection orders filed at the commencement of the actions. *Page 14 
 {¶ 19} Regardless, we find the trial court had jurisdiction to address appellant's objections. Additionally, we find no prejudicial error in the trial court's issuance of the March 27, 2007 CSPOs. It is fundamental that, to demonstrate reversible error on appeal, one must show not only that the trial court committed error, but also that the error resulted in prejudice. Smith v. Flesher (1967), 12 Ohio St.2d 107, paragraph one of the syllabus. Even if this court could find error here, appellant has failed to demonstrate any resulting prejudice. The March 19, 2007 CSPOs were effective until February 14, 2012, while the March 27, 2007 CSPOs were effective only until November 28, 2011. Further, the only other significant difference between the orders was that Coles' March 27, 2007 CSPO did not have the box checked that prohibited appellant from causing or encouraging any other person to do any act prohibited by the order. Because the trial court's March 27, 2007 CSPOs are either identical or less restrictive than the original CSPOs, appellant was not prejudiced by the later orders. Therefore, even if the trial court erred when it changed the provisions of the original CSPOs when it issued the March 27, 2007 CSPOs, we find appellant was not prejudiced by such changes. Thus, appellant's fourth assignment of error is overruled.
 {¶ 20} Appellant argues in her fifth assignment of error that the trial court erred when it failed to consider the hearing transcript when ruling on her objections to the magistrate's decision. Appellant contends that she filed the transcript from the magistrate's hearing on March 26, 2007 to support her objections, but the trial court issued its decisions overruling her objections on March 27, 2007. Appellant asserts that it is clear that the trial court did not consider the transcript to determine her objections. This court has before held that the trial court must consider a submitted transcript before ruling *Page 15 
on objections. See State v. Daskalov-DeBlanco (Nov. 21, 1996), Franklin App. No. 96APA04-529. However, appellant presents no evidence that the trial court did not review the transcript prior to overruling her objections. Appellant filed the transcript at 8:19 a.m. on March 26, 2007, and the trial court filed the CSPOs sometime on March 27, 2007. Thus, from the face of the record, as the trial court did not overrule appellant's objections until the day after appellant filed the transcript, we have no reason to believe the trial court did not review the transcript. An appellate court must presume the regularity and validity of the proceedings in the trial court, absent a record which affirmatively demonstrates otherwise. Knapp v. Edwards Laboratories
(1980), 61 Ohio St.2d 197. Therefore, where, as here, the record is silent, we must presume the trial court reviewed the record before overruling appellant's objections, absent an affirmative showing to the contrary. See Matter of Hermann (Jan. 27, 1995), Miami App. No. 94 CA 12 (where there has been no affirmative showing that the trial court did not consider the record before overruling objections and adopting the magistrate's recommendation, the appellate court must indulge the presumption that the trial court acted as required). Thus, appellant's fifth assignment of error is overruled.
 {¶ 21} Accordingly, appellant's first, second, third, fourth, and fifth assignments of error are overruled, and the judgments of the Franklin County Court of Common Pleas are affirmed.
Judgments affirmed.
 KLATT and FRENCH, JJ., concur. *Page 1