[Cite as *Cable v. McHenry*, 2019-Ohio-4293.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| BRAD CABLE | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28398 |
| | : | |
| v. | : | Trial Court Case No. 2019-CV-1055 |
| | : | |
| DON MCHENRY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of October, 2019.

. . . . . . . . . . .

BRAD CABLE, 5325 Rawlings Drive, Dayton, Ohio 45432
　　Plaintiff-Appellee, Pro Se

DON MCHENRY, 5313 Rawlings Drive, Dayton, Ohio 45432
　　Defendant-Appellant, Pro Se

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Don McHenry appeals from a final order of the Montgomery County Court of Common Pleas issuing a civil stalking protection order ("CSPO") against him pursuant to R.C. 2903.214.

{¶ 2} On March 8, 2019, plaintiff-appellee Brad Cable filed a petition for a CSPO against McHenry pursuant to R.C. 2903.214. (Dkt.1) The petition was heard and a temporary, ex parte CSPO was granted the same day. The CSPO protected Cable, his fiancé, and his niece who lived with him. (Dkt.3.) On March 11, 2019, McHenry was served with notice of the petition and the order of protection, and he was informed that the full hearing on the petition would be held on March 19, 2019. (Dkt.4.)

{¶ 3} The full hearing was held before the magistrate as scheduled on March 19, 2019. Neither Cable nor McHenry was represented by counsel, but both men testified and presented evidence. On April 16, 2019, the magistrate granted Cable's petition, the trial court adopted the order, and a "final" CSPO was entered against McHenry.

{¶ 4} On April 29, 2019, McHenry filed a motion to reconsider the issuance of the CSPO. (Dkt.13.) On May 3, 2019, before the magistrate could rule on the motion to reconsider, McHenry filed a motion to dismiss the CSPO. The magistrate scheduled a hearing on McHenry's motion to dismiss to be held on June 13, 2019. However, on May 14, 2019, McHenry filed a notice of appeal with this Court, thereby divesting the trial court of jurisdiction to make any further rulings in the case.

{¶ 5} Because they are interrelated, McHenry two assignments of error will be discussed together as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING

GOOD CAUSE FOR EX PARTE PROTECTION ORDERS [sic] BASED ON APPELLEES PLEAD [sic] FORM –D P.2, CLAIMING 1 (ONE) OCCURRENCE OF IMMEDIATE AND PRESENT DANGER WITH IMMEDIATE AND IRREPARABLE HARM OR INJURY IN AN EXTRAORDINARY SITUATION OF THREATS AND CONDUCT.

THE TRIAL COURT ABUSED ITS DISCRETION BY DISREGARDING APPELLANT['S] TESTIMONY AND EVIDENCE.

{¶ 6} R.C. 2903.214(C) provides in pertinent part:

A person may seek relief under this section for the person, or any parent or adult household member may seek relief under this section on behalf of any other family or household member, by filing a petition with the court. The petition shall contain or state all of the following:

(1) An allegation that the respondent is eighteen years of age or older and engaged in a violation of section 2903.211 of the Revised Code against the person to be protected by the protection order * * * [.]

{¶ 7} R.C. 2903.211, which defines menacing by stalking, states that "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person."  R.C. 2903.211(A).  R.C. 2903.211(D)(1) defines "pattern of conduct" as two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents.  "R.C. 2903.211(D)(1) does not require that a pattern of conduct be proved by events from at

least two different days. Arguably, a pattern of conduct could arise out of two or more events occurring on the same date, provided that there are sufficient intervals between them." *State v. Scruggs*, 136 Ohio App.3d 631, 634, 737 N.E.2d 574 (2d Dist.2000). One incident is insufficient to establish a "pattern of conduct." *Id.* The statute does not define the term "closely related in time," but case law suggests the trier of fact should consider the evidence in the context of all circumstances of the case. *Middletown v. Jones*, 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003, ¶ 10 (12th Dist.). Trial courts may take every action into consideration, even if some actions in isolation would not seem particularly threatening. *Guthrie v. Long*, 10th Dist. Franklin No. 04AP913, 2005-Ohio-1541, ¶ 12.

{¶ 8} In the instant case, the record establishes that the parties, who live next door to one another, have a severely strained and contentious relationship. In his petition for a CSPO, Cable averred that on March 6, 2019, he observed McHenry standing in his own backyard near Cable's fence. Cable stated that McHenry was cursing while he stood there and told Cable to "come on" and that "he ha[d] something for" Cable. Cable also averred that he believed McHenry was throwing rat poison in his yard because Cable's dog had recently died from allegedly being poisoned with rat poison.

{¶ 9} Cable further stated that, the next day on March 7, 2019, he was changing the batteries in his outdoor security cameras when he observed McHenry again standing in his own backyard holding a shotgun. Cable heard McHenry state that "he [was] going to shoot a motherf***er tonight." Based upon the two instances of McHenry's conduct as outlined in the petition, Cable stated that he needed a CSPO for the protection of himself, his fiancé, and his niece.

{¶ 10} In his first assignment, McHenry argues that Cable was lying when he made the averments in his petition for a CSPO regarding McHenry's conduct on March 6 and 7, 2019. Thus, McHenry asserts that it was error for the magistrate to have granted the CSPO. However, the record establishes that Cable asserted in his petition that, in two separate instances over the course of two consecutive days, McHenry behaved in an overtly threatening and hostile manner towards Cable and his family. In our view, McHenry's actions in this regard could be construed as a "pattern of conduct" pursuant to R.C. 2903.211(D)(1), such that Cable was entitled to the issuance of a CSPO against McHenry. Whether Cable's accusations against McHenry were true was a matter for the trial court to determine after hearing testimony and observing evidence submitted by the parties at the full CSPO hearing. Accordingly, the trial court did not err when it granted Cable's petition for a CSPO against McHenry.

{¶ 11} In his second assignment, McHenry essentially contends that the evidence presented was not sufficient for the issuance of a CSPO. To be entitled to a CSPO, the petitioner must show by a preponderance of the evidence that the respondent engaged in menacing by stalking, a violation of R.C. 2903.211. *Lewis v. Jacobs*, 2d Dist. Montgomery No. 25566, 2013-Ohio-3461, ¶ 9. Whether the evidence presented was legally sufficient to sustain a judgment is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 12} Menacing by stalking is defined as "engaging in a pattern of conduct" that knowingly "cause[s] another to believe that the offender will cause physical harm to the other person or a family member of the other person or cause mental distress to the other person or a family member of the other person." R.C. 2903.211(A)(1). In order to

establish a pattern of conduct, only two or more actions closely related in time are required. R.C. 2903 .211(D)(1). In determining what constitutes a pattern of conduct, courts must take every action of the respondent into consideration, even if some of the actions in isolation do not seem particularly threatening. *Jones*, 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003, ¶ 10. Explicit threats are not necessary; therefore, nonverbal acts directed at the victim may be enough to cause the victim reasonably to believe that physical harm will ensue. *State v. Smith*, 126 Ohio App.3d 193, 709 N.E.2d 1245 (7th Dist.1998).

{¶ 13} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 14} In the decision granting the CSPO against McHenry, the magistrate made the following findings of fact:

> The parties are neighbors. Respondent [McHenry] videotapes Petitioner [Cable] and his family members. Respondent carried a gun in the yard and says he will shoot a mother f****r. Petitioner's dog was poisoned. Respondent was at Petitioner's daughter's window videotaping.

{¶ 15} Based upon these findings of fact, the magistrate found by a preponderance of the evidence that McHenry knowingly engaged in a pattern of conduct that caused Cable to believe that McHenry would cause him or his family members physical harm and/or mental distress. Thus, the CSPO was granted.

{¶ 16} The magistrate evidently credited the testimony of Cable where his

testimony conflicted with that of McHenry. The credibility of the witnesses and the weight to be given to their testimony are primarily matters for the trier of fact to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510, *4 (Oct. 24, 1997).

{¶ 17} Cable's testimony, if believed, established facts upon which the trial court could have reasonably relied in finding that McHenry engaged in a pattern of conduct in an effort to scare and intimidate Cable and his family. The evidence clearly established that McHenry acted in a threatening manner toward Cable. Specifically, he made overt verbal references in Cable's presence to shooting someone while brandishing a firearm. Cable further testified that McHenry was constantly videotaping him and his family members. Furthermore, Cable testified that he called the police in December 2018, for an incident in which he observed McHenry pointing a video camera into his daughter's window at their residence. We also note that McHenry did not deny that he was openly carrying a shotgun in his backyard on March 7, 2019. McHenry testified that he was not trying to threaten anyone, but rather that he was merely exercising his constitutional rights on his own property.

{¶ 18} On the record before us, we find that the trial court could have reasonably concluded that McHenry's actions were committed with the requisite culpability. From these facts, the trial court could have found that McHenry knew that his conduct was likely to cause Cable to believe that McHenry would cause him and/or his family to suffer

physical harm or mental distress. Therefore, we find that the CSPO was supported by the preponderance of the evidence and did not constitute an abuse of discretion.

{¶ 19} McHenry's first and second assignments of error are overruled.

{¶ 20} Both of McHenry's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

Brad Cable
Don McHenry
Hon. Timothy N. O'Connell