**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Crawl*, Slip Opinion No. 2025-Ohio-2799.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-2799

THE STATE OF OHIO, APPELLEE, *v.* CRAWL, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Crawl*, Slip Opinion No. 2025-Ohio-2799.]**

*Criminal law—Sufficiency of the evidence—Menacing by stalking—R.C. 2903.211—Sufficient evidence was presented at trial of victim's mental distress, offender's pattern of conduct, and that the offender acted knowingly to support offender's menacing-by-stalking conviction—Court of appeals' judgment affirmed.*

(No. 2024-0532—Submitted April 23, 2025—Decided August 12, 2025.)

APPEAL from the Court of Appeals for Montgomery County,
No. 29859, 2024-Ohio-752.

_____

SHANAHAN, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, and HAWKINS, JJ., joined.

**SHANAHAN, J.**

{¶ 1} A man convicted of a menacing-by-stalking offense against an elementary-school classmate more than a decade after they had been in school together asks us to reverse his conviction, arguing that the evidence was insufficient to support a finding that his actions were knowingly made to cause the victim to feel threatened with physical harm or to cause her mental distress. The Second District Court of Appeals affirmed the trial court's judgment, finding that posting inappropriate comments on the victim's social-media account and showing up at the victim's front door uninvited and turning the doorknob of that door, together with the victim's testimony of the effect these interactions had on her, was sufficient to support the man's menacing-by-stalking conviction. 2024-Ohio-752, ¶ 23-24, 26-27 (2d Dist.).

{¶ 2} When viewed in the light most favorable to the prosecution, the actions of the man are sufficient to support his menacing-by-stalking conviction. We therefore affirm the judgment of the Second District.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 3} Appellant, Dorian Crawl, went to elementary school with A.P. They were never friends. They were not even acquaintances. They never spoke with each other. In May 2022, A.P. was celebrating her 29th birthday. She posted a photo on her Instagram account and wrote, "29, be great to me." Crawl commented on A.P.'s birthday post, first by sending a "sad emoji" and then by writing, "Happy Birthday, baby girl. I love you. Hope we can see each other sometime soon." A.P. did not respond to Crawl. Six days later, A.P. posted a video on her Instagram account. Crawl commented on that post, writing: "Where is this, [A.P.]? Is this your house, boo?"

{¶ 4} Less than a month later, Crawl appeared at the front door of A.P.'s apartment in West Carrollton. Crawl knocked on the door, and A.P. went to the door, looked through the peephole, and saw him. She asked who was there, and

Crawl responded, "It's Dorian. I'm [A.P.'s] friend. I'm here to see her." Crawl then turned the doorknob. A.P. turned the deadbolt to lock the door and ran to the back of her apartment where her then nine-year-old daughter was located. Frightened, A.P. put her daughter in a closet and called the West Carrollton police. When a police officer arrived, Crawl was no longer at the scene. At trial, the officer testified that when he first made contact with A.P., she was visibly upset, crying, and nervous, as if something significant had happened to her.

{¶ 5} During his investigation of the incident, the officer contacted Crawl. Crawl told the officer that he went to school with A.P. during their teenage years but that they were not friends and never talked to each other at school. According to the officer, Crawl believed that there was potential for a relationship with A.P. and he was attempting to contact A.P. in order to "follow up on that." The officer testified that Crawl "felt as though there was more and he was looking into that, more of a relationship that they could have had." The officer noted that Crawl wanted to find out why A.P. had not asked him to prom and why they had not been in a relationship. Crawl admitted to the officer that he had found A.P.'s address online, and he stated that he did not like how A.P. had responded to him. Even after the officer confronted Crawl about appearing at A.P.'s apartment uninvited, Crawl sent messages to A.P. on social media.

{¶ 6} A.P. testified that the incident caused her significant anxiety and prompted her to install cameras around her apartment, ensure that she was on her phone with someone when she came home late at night with her daughter, have her boyfriend stay over more often because she was uncomfortable staying alone at home, and look for another place to live in the hope of moving immediately. She testified that when she saw Crawl at the courthouse on the day of trial, she had to immediately go to the bathroom. She further stated that while testifying, she felt like she was going to throw up and her heart was pumping out of her chest.

{¶ 7} Crawl was charged in the Miamisburg Municipal Court with menacing by stalking in violation of R.C. 2903.211(A)(1). The trial court found Crawl guilty of that offense. Crawl appealed to the Second District, which affirmed the trial court's judgment. 2024-Ohio-752 at ¶ 31-32 (2d Dist.).

{¶ 8} Crawl appealed to this court, and we accepted the appeal to consider his first proposition of law:

> The simple act of making non-threatening comments to an individual's public social media platforms posts, when there is no relationship between the individuals, and the person who posts on social media takes no action to put the commentor on notice that she finds the comments offensive, unwanted, or considered them threatening, is insufficient to support a finding that the comments were knowingly made to cause the poster on [the] social media platform to feel threatened with harm or to cause her mental anguish to support a conviction of stalking under R.C. 2903.211(A)(1).

*See* 2024-Ohio-2373.

## II. ANALYSIS

### A. Standard of Review

{¶ 9} A challenge to the sufficiency of the evidence is reviewed de novo. *State v. Smith*, 2022-Ohio-269, ¶ 5, citing *State v. Dent*, 2020-Ohio-6670, ¶ 15. When reviewing the sufficiency of the evidence to support a criminal conviction, the relevant inquiry for the appellate court is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 1997-Ohio-

355, ¶ 49, fn. 4. A trial court's verdict should stand on appeal unless reasonable minds could not reach the trier of fact's conclusion. *See State v. Montgomery*, 2016-Ohio-5487, ¶ 74. In this case, when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find that the essential elements of the menacing-by-stalking offense were proved beyond a reasonable doubt.

### B. Ohio's menacing-by-stalking statute

{¶ 10} R.C. 2903.211(A)(1) provides: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person."

{¶ 11} "Pattern of conduct" means "two or more actions or incidents closely related in time." R.C. 2903.211(D)(1). An "action" encompasses the "doing" of a "thing," and an "incident" is "an occurrence or happening." Bryan A. Garner, *Garner's Modern English Usage*, 20, 584 (5th Ed. 2022). Explicit threats are not necessary to establish the elements of menacing by stalking; nonverbal actions directed at the victim may also constitute a pattern of conduct if they cause the victim to reasonably believe that physical harm or mental distress will ensue. *See State v. Smith*, 126 Ohio App.3d 193, 197-201 (7th Dist. 1998) (sufficient evidence was offered to support a pattern of conduct when the offender on two occasions followed the victim from the victim's place of employment and pulled his vehicle beside the victim's vehicle and continually stared at the victim and when the offender on a third occasion engaged in the same nonverbal action but also verbally threatened the victim with physical harm).

{¶ 12} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Under the "knowingly" standard, the

offender does not have to predict the "precise consequences" of his conduct, only that the consequences were foreseeable. *State v. Benson*, 2018-Ohio-2235, ¶ 20 (8th Dist.). Whether the consequences are foreseeable is based on the surrounding facts and circumstances. *See State v. Teamer*, 1998-Ohio-193, ¶ 13.

{¶ 13} "Mental distress" is defined as "[a]ny mental illness or condition that involves some temporary substantial incapacity" or "[a]ny mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not" such services were requested or received. R.C. 2903.211(D)(2)(a) and (b). Mental distress does not need to be incapacitating or debilitating, and expert testimony is not needed to prove it. *See State v. Szloh*, 2010-Ohio-3777, ¶ 18 (2d Dist.) (trial court may rely on its knowledge and experience to determine mental distress).

### C. Application of the menacing-by-stalking statute to Crawl's case

#### 1. A.P.'s Mental Distress

{¶ 14} The court of appeals determined that Crawl's actions caused A.P. mental distress. 2024-Ohio-752 at ¶ 24 (2d Dist.). We agree. A.P.'s mental distress was established through her testimony, her actions following the incident at her apartment, and the police officer's testimony of his observations of A.P. when he first made contact with her. Further, A.P.'s testimony is clear that Crawl's actions caused A.P. to fear for her safety and for the safety of her daughter.

#### 2. Crawl's Pattern of Conduct

{¶ 15} In determining what constitutes a "pattern of conduct," the court must consider all actions or incidents, even if some of them, when viewed in isolation, do not seem threatening. *See State v. Gonzalez*, 2022-Ohio-2870, ¶ 11 (2d Dist.); *Cable v. McHenry*, 2019-Ohio-4293, ¶ 12 (2d Dist.). The actions or incidents must be closely related in time. R.C. 2903.211(D)(1). And explicit threats are unnecessary. *Cable* at ¶ 12.

6

{¶ 16} In this case, Crawl's actions constituted a "pattern of conduct" under R.C. 2903.211(D)(1). His inappropriate social-media messages, including professing his love for A.P. and asking if a video showed A.P.'s home, followed closely in time by him showing up uninvited at A.P.'s apartment and attempting to enter the apartment by turning the doorknob, together with continuing to message A.P. after being confronted by a police officer about appearing at A.P.'s apartment uninvited, were sufficient to establish two or more actions closely related in time and demonstrated a pattern of conduct that caused A.P. mental distress for her and her daughter. After his discussion with the officer, Crawl was unquestionably on notice that A.P. did not want to be contacted by him.

### 3. Crawl Acted Knowingly

{¶ 17} Again, regarding "knowingly," "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Intent is not required; only an awareness of the probable consequences of one's actions is required. *Benson*, 2018-Ohio-2235, at ¶ 20 (8th Dist.). Even if Crawl did not intend to cause A.P. mental distress, a rational trier of fact could find that he knew that causing A.P. mental distress was the probable consequence of his actions.

{¶ 18} Crawl's conduct meets the "knowingly" standard under R.C. 2901.22(B). His argument that a lack of explicit threats, a prior relationship with A.P., or notice from A.P. that she found his online comments offensive negates his knowledge is unpersuasive. As explained above, explicit threats are not required to prove menacing by stalking. *Cable*, 2019-Ohio-4293, at ¶ 12 (2d Dist.). Similarly, a prior relationship is not required. We have held that a prior relationship can support the inference that the offender acted knowingly, such as when there have been prior acts of domestic violence during the relationship. *See State v. Spaulding*, 2016-Ohio-8126, ¶ 72 ("evidence of [the offender's] past domestic

violence would be relevant to establish both a pattern of conduct and that [the offender] knew that his conduct would cause [the victim] to believe that he was going to harm her"). Again, however, a prior relationship is not a prerequisite. Here, while there was no prior relationship between Crawl and A.P., this fact alone does not foreclose finding that Crawl acted knowingly.

{¶ 19} Finally, A.P. was not required to block Crawl on social media or affirmatively reject his advances. While these actions may allow a factfinder to determine that the offender acted knowingly, *see State v. Bone*, 2006-Ohio-3809, ¶ 34 (10th Dist.); *Lazor v. Souders*, 2024-Ohio-774, ¶ 54-56 (12th Dist.), Crawl's position would require victims to engage with their stalkers, who, in some cases, may be dangerous. We will not adopt such a rule.

{¶ 20} Crawl asks this court to conclude that the act of making nonthreatening comments to a person's posts on a public social-media platform, when there is no relationship between the poster and the commentor, and the person who posts on social media takes no action to put the commentor on notice that she finds the comments offensive, unwanted, or threatening, is insufficient to support a finding that the comments were knowingly made to cause the poster on the social-media platform to feel threatened with physical harm or to cause the poster mental distress to support a conviction of menacing by stalking under R.C. 2903.211(A)(1). He asks us to reach this conclusion on a scenario not before us. Crawl's conduct far exceeded the behavior set forth in his proposition of law by him sending inappropriate messages on social media, showing up at the victim's home uninvited, and attempting to gain access to her home. There was sufficient evidence to support Crawl's menacing-by-stalking conviction.

### III. CONCLUSION

{¶ 21} Crawl suggests that the act of making nonthreatening comments to a person's posts on a public social-media platform is insufficient to support a finding that the comments were knowingly made to cause the poster to feel threatened with

physical harm or to cause the poster mental distress. But Crawl went beyond the act of posting inappropriate comments. When viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find that the essential elements of the menacing-by-stalking offense were proved beyond a reasonable doubt. Thus, there was sufficient evidence to support Crawl's conviction for menacing by stalking. We therefore affirm the judgment of the Second District Court of Appeals.

Judgment affirmed.

————————————

Smith, Meier & Webb, L.P.A., Mark D. Webb, and Chase T. Kirby, for appellee.

Theresa G. Haire, Montgomery County Public Defender, and Arvin S. Miller, Assistant Public Defender, for appellant.

Dave Yost, Attorney General, T. Elliot Gaiser, Solicitor General, and Jana M. Bosch, Deputy Solicitor General, urging affirmance for amicus curiae, Ohio Attorney General Dave Yost.

————————————